**Marilyn S. POSNER, individually and as representative of a class, Plaintiff,**

v.

**COOPERS & LYBRAND, Arthur D. Little, Inc., and Robert M. Beningson, Defendants.**

**No. 80 Civ. 6033 (GLG).**

United States District Court,
S. D. New York.

Dec. 23, 1981.

R. Alan Stotsenburg, P. C., New York City, for plaintiff; Ronald T. Thomson, New York City, of counsel.

Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov, New York City, for defendant Coopers & Lybrand; Franklin B. Velie, David M. Butowsky, Theodore Altman, June H. Brettler, Joseph A. Clark, III, Associate Gen. Counsel, New York City, of counsel.

Sage, Gray, Todd & Sims, New York City by Hale & Door, Boston, Mass., for defendant Arthur D. Little, Inc.

Townley & Updike, New York City, for defendant Robert M. Beningson; Elliot Paskoff, Kenneth I. Schacter, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

This putative class action charging securities fraud arises from the unsuccessful attempt by Combustion Equipment Associates, Inc. ("CEA") to develop a process for

converting garbage into a high heat-value fuel called ECO–FUEL II. The plaintiff alleges that at some point between 1972 and 1975 the defendants became aware that the process for producing ECO–FUEL II was not economically viable and that they falsely inflated (or supported) the market price of CEA stock by failing to disclose this information. By order dated April 30, 1981, this Court dismissed the complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), but granted plaintiff leave to file an amended complaint. Having been served with an amended complaint that is nearly identical to the original complaint, the defendants have again moved to dismiss.[1] For the reasons set forth below, the motion is granted.

## I. The Amended Complaint

The named plaintiff purchased a total of approximately 1500 shares of CEA common stock on ten different occasions between November 1976 and February 1979. The class she seeks to represent consists of all persons who purchased CEA common stock between January 1, 1972 and September 17, 1980.[2]

The defendants named in the amended complaint are Robert M. Beningson, former president and chief executive officer of CEA, Coopers & Lybrand ("C&L"), the accounting firm that acted as CEA's auditor, and Arthur D. Little ("ADL"), the consulting firm that helped develop ECO–FUEL II. CEA is not named as a defendant in the amended complaint because, subsequent to the institution of this action, CEA filed a petition for reorganization under Chapter XI of the Bankruptcy Code, and consequently, all proceedings against it have been stayed pursuant to section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a) (Supp. IV 1980).

The plaintiff divides her allegations against the defendants into two sections entitled "The Scheme" and "False and Misleading Statements and Material Omis-

sions." The alleged scheme consists of a "fraudulent common plan, scheme, conspiracy and course of conduct" by the defendants "to inflate the value of CEA Common Stock by deception of the investing public." Amended Complaint ¶ 16. The allegedly false and misleading statements consist of the defendants' failure to disclose (1) the "scheme," (2) that ECO–FUEL II was not economically viable and was highly dangerous, (3) that no firm orders had been placed for ECO–FUEL II, and (4) that the sales and earnings of CEA were grossly overstated. Amended Complaint ¶ 33. The plaintiff, however, does not identify the specific documents in which these allegedly false and misleading statements appear.

The essence of the fraud is alleged in paragraphs 20 and 22. Paragraph 20 states that

[u]pon information and belief, at some point (which plaintiff cannot allege with specificity prior to discovery) after January 1, 1972 but prior to 1975, defendants and CEA became aware that the process for producing ECO–FUEL II was not economically viable in that the fuel produced could never be a viable substitute for petroleum based fuel nor could it ever be a viable fuel in its own right. First, it was and is impossible to remove glass which is present in all garbage from the garbage to be reprocessed to make ECO–FUEL II. As a result, substantial quantities of glass remained present in ECO–FUEL II, which melted, destroying any furnace or boiler in which the fuel was burned. Second, because it was highly combustible, the actual reprocessing of garbage into ECO–FUEL II was highly dangerous because of the risk of explosion during the garbage-to-fuel process.

Paragraph 22 states that

[u]pon information and belief, although they had become aware at the point noted above that ECO–FUEL II was not viable economically and also highly dan-

---

1. The Court did not receive the last of the many papers filed in connection with this motion until November 18, 1981.

2. The plaintiff does not explain why these particular dates were chosen.

gerous, CEA and defendants intentionally failed during the time period to disclose to plaintiff and other purchasers of CEA common stock (and the investing public generally) the facts set forth above. Instead, at that point and continuing through the time period, by means of annual reports and financial statements issued on behalf of CEA, as well as other communications to the investing public, they represented that large orders had been placed by utility companies for ECO–FUEL II when, in fact, no such firm orders, apart from trial or experimental use, had ever been placed.

The allegations against C&L and Beningson are contained in paragraphs 23–32 of the amended complaint in a section entitled "Fraudulent Accounting Practices." The plaintiff alleges that these defendants and CEA adopted three accounting methods to overstate CEA's financial condition. The first of these allegedly fraudulent accounting practices involves a resource recovery plant in East Bridgewater, Massachusetts. The plaintiff alleges that the financial statements issued to shareholders and the investing public listed long-term receivables of approximately $10.5 million when, in fact, CEA and defendants Beningson and C&L knew that the East Bridgewater facility would not be able to produce sufficient cash flow because the ECO–FUEL II process was not viable. The second allegedly fraudulent accounting practice concerns the reporting of CEA's sales and earnings. The plaintiff alleges that the method adopted by CEA and defendants Beningson and C&L failed to disclose that "substantial amounts" of CEA's earnings came from investment tax credits and not from the sale of CEA products. The plaintiff, however, does not specify what this "substantial amount" is nor does she allege what accounting practices should have been used. The third accounting practice alleged to be fraudulent involves the use of the "percentage of completion" method to report sales. The plaintiff alleges that this was improper because C&L and Beningson knew of the non-viability of ECO–FUEL II and the consequent inability to complete orders for ECO–FUEL II.

The allegations against ADL are quite vague. Indeed, the plaintiff refers to ADL individually only three times in this fifteen page complaint. In paragraph seven, the plaintiff identifies ADL as a business and engineering consultant. Plaintiff alleges that "ADL provided sale[s] support, consulting services and research and development to CEA and engaged in joint ventures with CEA." In paragraph nineteen, the plaintiff alleges that CEA and ADL began developing ECO–FUEL II during 1972. Finally, in paragraph thirty-one, the plaintiff alleges that ADL "actively assisted in the scheme . . . to protect its financial state" and "to protect its reputation."

## II. Sufficiency of the Complaint

■ It would serve no useful purpose to review in detail the many cases in this circuit interpreting the purposes and requirements of Fed.R.Civ.P. 9(b). *See generally Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978); *Felton v. Walston & Co.*, 508 F.2d 577 (2d Cir. 1974); *Ross v. Warner*, 480 F.Supp. 268, 271 (S.D.N.Y.1979); *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd mem.*, 636 F.2d 1201 (2d Cir. 1980). The standard requirements are that the plaintiff must plead facts giving rise to an inference of fraud, *Skubik v. Leeds*, No. 80–2226 (S.D. N.Y. May 13, 1981); *Ross v. Warner, supra*, 480 F.Supp. at 271, and must state these facts with sufficient particularity to apprise the defendants of the misconduct complained of to enable them to prepare a defense. *Gross v. Diversified Mortgage Investors, supra*, 431 F.Supp. at 1087. The Amended Complaint satisfies neither of these requirements.

■ The gist of the alleged fraud is that the defendants knew of the non-viability of ECO–FUEL II and intentionally concealed this fact. In *Ross v. A. H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980), the Second Circuit rejected a similar complaint for failing to plead fraud with

particularity. *Robins* involved the Dalkon Shield, an interuterine birth control device manufactured by the defendants. The plaintiffs alleged that the defendants failed to reveal information indicating that the shield was less effective and more dangerous than earlier statements had indicated. Recognizing that it was unrealistic to expect plaintiffs to be able to plead defendants' *actual* knowledge, the Second Circuit ruled that the plaintiffs had to set forth a "factual basis for the allegations regarding knowledge." 607 F.2d at 558. "It is reasonable," noted the court, "to require that the plaintiffs specifically plead those events which they assert give rise to a strong inference that the defendants had knowledge contained . . . in the complaint or recklessly disregarded their existence. And, of course, plaintiffs must fix the time when these particular events occurred." *Id.*

Although plaintiff need not plead the exact date upon which the defendants became aware that ECO–FUEL II was not economically viable, the plaintiff must supply some factual basis for the allegation that the defendants had reached this conclusion at some point during the time period alleged. The plaintiff has not done this. Although she states the reasons why ECO–FUEL II failed and goes to great length to explain how CEA's accounting practices constituted an inaccurate reporting of CEA's sales and earnings in light of the non-viability of ECO–FUEL II, there is nothing factual in the amended complaint that supports the inference that any of the defendants had knowledge of the non-viability of ECO–FUEL II prior to 1975 (or, for that matter, at any specified time).[3] The time when defendants acquired the purported knowledge is critical to the com-

plaint. We are not dealing with a concrete fact, but rather with a conclusion: "that the process . . . was not economically viable." Amended Complaint ¶ 20. Not everyone reaches a conclusion at the same time, and liability to purchasers of stock would arise only after the conclusion was reached and additional material misstatements made.[4]

Another major deficiency of the amended complaint is the failure to identify the exact statements that are alleged to be fraudulent. In *Fidenas A. G. v. Honeywell, Inc.,* 501 F.Supp. 1029 (S.D.N.Y.1980), this Court noted that a complaint must identify "1) precisely what statements were made, and 2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, 3) the content of such statements and the manner in which they misled the plaintiff, and 4) what the defendants 'obtained as a consequence of the fraud.' "

*Id.* at 1039 (quoting *Todd v. Oppenheimer & Co.,* 78 F.R.D. 415, 420–21 (S.D.N.Y.1978) (quoting *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080 (S.D.N.Y.1977))). The amended complaint does not satisfy any of these requirements.

An additional deficiency of the amended complaint is the plaintiff's failure to specify the price of the stock at the time of her purchases. In *Skubik v. Leeds,* No. 80–2226, slip op. at 6 (S.D.N.Y. Sept. 8, 1980), a case heavily relied upon by all the parties, this Court noted that the complaint must contain this information. Indeed, the Court directed the plaintiff's counsel to supply this information during the oral argument of the initial motion to dismiss. The

---

**3.** It is important to note in this regard that most of the allegations in the amended complaint are based "on information and belief." The general rule is that Rule 9(b) pleadings cannot be based on information and belief, although an exception has been carved for matters that are "peculiarly within the adverse parties' knowledge," provided that the allegations are "accompanied by a statement of facts upon which the belief is founded." *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir. 1972).

Many of the matters alleged on information and belief do not appear peculiarly within the defendants' knowledge. More importantly, the plaintiff has not included a statement of facts upon which the belief was founded.

**4.** The time of these occurrences might also have consequences with respect to the statute of limitations; this factor cannot be addressed by defendants unless the dates are set forth with some particularity.

amended complaint, nevertheless, does not contain this information. The Court does not understand why the plaintiff's counsel continues to fail to provide this basic and readily obtainable information.

 Finally, the complaint does not specify how each defendant acquired the knowledge necessary to reach the conclusion that the process was not viable. For the president of the company and the consultant it might be argued that it must have come to them from their work on the project. For outside auditors, however, it is not apparent why they would get involved in these business judgments.

### III. Dismissal of the Action

The Court is hesitant to dismiss a possibly meritorious claim because of defects in the pleadings. *Ross v. A. H. Robins Co., supra,* 607 F.2d at 547. When the plaintiff is put on notice of the deficiencies in his complaint and fails to correct them in the amended complaint, however, dismissal with prejudice is proper. *Denny v. Barber, supra,* 576 F.2d at 471; *see Skubik v. Leeds, supra,* slip op. at 6.

Prior to the dismissal of her original complaint, the plaintiff argued that "[i]f it is a good claim, let's get on with it. If not let's be done with it. . . . If the claim has merit, it will quickly appear." Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss the Complaint and Stay Discovery at 6. The Court, assured by the plaintiff's counsel that there was a "real" fraud lurking, fully explored the deficiencies of the complaint with counsel prior to granting the defendants' motion to dismiss. The plaintiff then had sixty days to amend her complaint. The net result has been this amended complaint, which, for the purposes of Fed.R.Civ.P. 9(b), is nearly identical to the original complaint. The Court is not

prepared to have a third go-around. Accordingly, the action is dismissed with prejudice.[5]

SO ORDERED.

---

**5.** Because of our conclusion that the amended complaint does not satisfy Fed.R.Civ.P. 9(b), we need not consider the defendants' alternative arguments under Fed.R.Civ.P. 12(b)(6). With respect to the plaintiff's claims under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*, we note that it too must comply with Rule 9(b) because it alleges fraud. *Todd v. Oppenheimer,* 78 F.R.D. 415, 419 (S.D.N.Y. 1978). Moreover, since the plaintiff never addressed the defendants' arguments regarding section 12(2), the Court deems her to have abandoned this claim.