Karl H. BARTELS, et al., Plaintiffs,

v.

CLAYTON BROKERAGE CO. OF ST. LOUIS, INC., et al., Defendants.

No. 85 Civ. 7096 (GLG).

United States District Court, S.D. New York.

March 28, 1986.

Lovell & Stewart, New York City, for plaintiffs; Christopher Lovell, of counsel.

Cowan, Liebowitz & Latman, P.C., New York City, Thompson & Mitchell, St. Louis, Mo., for defendants; Peter R. Porcino, New York City, Kenton E. Knickmeyer, St. Louis, Mo., of counsel.

## OPINION

GOETTEL, District Judge:

The plaintiffs seek damages for the defendants' allegedly fraudulent acts in inducing them to invest in commodity futures contracts. The plaintiffs allege that the defendants misrepresented the financial risks of commodity futures and neglected to conform to the Commodity Futures Trading Commission ("CFTC") rules in setting up the plaintiffs' accounts. Their complaint alleges violations of section 4b of the Commodity Exchange Act, 7 U.S.C. § 6b (1982) ("CEA"); section 901(a) of the Organized Crime Control Act of 1970, 18 U.S.C. § 1961 *et seq.* (1982) ("RICO"); and common law fraud.

Defendant, Clayton Brokerage of St. Louis ("Clayton"), moves, pursuant to rules 9, 12, and 54 of the Federal Rules of Civil Procedure, to dismiss all three causes of action, or, alternatively, for summary judgment. For the reasons stated below Clayton's motion is granted in part and denied in part.

*Background*

The plaintiffs are a group of fifty-six foreign investors, primarily West German citizens.[1] Each had separate dealings with the defendants. Defendant Clayton, a Missouri corporation doing business in New York, is a Futures Commissions Merchant ("FCM") registered with the CFTC. The other named defendants are Westfield Holdings, Ltd. ("Westfield"), a corporation organized under the laws of the Cayman Islands, British West Indies; John Tunnel ("Tunnel"), a United States citizen and president of Westfield; Westfield Financial Services GmbH ("GmbH"), a wholly owned subsidiary of Westfield organized under the laws of the Federal Republic of Germa-

---

1. Fifty-four of the plaintiffs are citizens of the Federal Republic of Germany, one is French, and one is Dutch.

ny;[2] and Westfield Financial Services, Inc. ("Financial").[3] When this motion was filed by Clayton, it was the only defendant that had been served.[4]

On or before November 14, 1978, Clayton, Tunnel, Westfield, and GmbH set up a joint New York enterprise (the "Enterprise"). Tunnel and Westfield subleased space from Clayton's New York quarters at Four World Trade Center. Clayton agreed to pay Tunnel, Westfield, and GmbH a monthly fee to solicit customers for the Enterprise. The customers would open accounts with Clayton, which would execute trades in commodity futures contracts on their behalf. For every transaction in a customer's account, Clayton charged a commission. Clayton agreed to give a portion of its commissions to Tunnel and Westfield.[5] GmbH solicited European customers, some of whom are the plaintiffs in this action.

After November 14, 1978, GmbH sent letters to the plaintiffs recommending investments in Treasury Bonds ("T-bonds") and gold in the commodity futures market. GmbH represented that investments in T-bonds and gold futures were relatively risk-free.[6] GmbH advised that it would open commodity trading accounts for European customers with Clayton, "its exclusive broker with forty years of successful trading experience." Complaint, Exhibit A. GmbH also solicited customers by phone, making many of the same representations orally.

The plaintiffs opened accounts by returning a form[7] and money to GmbH. GmbH deposited this money into a German bank account opened in Clayton's name.[8] The money was then transferred to Clayton in New York. Clayton opened separate accounts for each plaintiff and commenced trading in T-bonds and gold futures, as well as a variety of other commodity futures.[9] Clayton continued trading on behalf of the plaintiffs until January 1981.[10]

2. GmbH is now in voluntary liquidation.

3. Clayton contends that Financial does not exist. However, in an affidavit presented to the CFTC, Tunnel claims to have been the president and chairman of an entity called Westfield Group, Inc., an Illinois corporation that was dissolved by order of the Secretary of State of Illinois on December 1, 1982. This may be the same entity as the defendant named "Financial."

4. The Federal Rules of Civil Procedure 4(j) state: "[i]f a service and complaint is not made upon the defendant within 120 days after the filing of the complaint ... the action shall be dismissed as to th[ose] defendant[s] without prejudice...." The plaintiffs filed their complaint on September 9, 1985; since more than 120 days have passed, this action is dismissed, without prejudice, as to John Tunnel and Westfield Services, Inc. The other two Westfield companies are foreign corporations and, hence, exempted from the 120-day time limitation under Fed.R.Civ.P. 4(j). However, the plaintiffs must serve these defendants under Fed.R.Civ.P. 4(i).

5. The plaintiffs assert that the Enterprise had a financial incentive to churn their accounts because Clayton was sharing its commissions with Tunnel and Westfield. A broker is said to "churn" a customer's account if excessive numbers of trades are made resulting in little return for the investor yet large accrued commissions for the broker.

6. The letters represented that the Hanseatic Economic Services, Inc. ("Hanseatic"), a German financial advisory concern, recommended the same investments because a recession was beginning in the United States and T-bond prices would fall, yielding investors an extraordinary profit of 200%. In fact, GmbH had placed advertisements in a Hanseatic newsletter recommending investments in T-bonds and gold futures.

7. The letter sent to GmbH asked customers to return an "account opening application form." Complaint, Exhibit A. The record provides no copy of this form nor any details as to what information it contained, who processed or kept the forms, or whether the plaintiffs actually signed these forms.

8. The account was housed in the Bankers Trust-Hamburg office.

9. At oral argument on January 17, 1986, the plaintiffs alleged that Clayton traded in pork bellies.

10. The fifty-six plaintiffs did not simultaneously close their accounts on January 1, 1981. Rather, it is more probable that the last account was closed then. The actual mechanics involved in setting up these accounts and other aspects of the fraudulent scheme are not apparent from the plaintiffs' complaint. Much of the informa-

The plaintiffs allege that they relied on misrepresentations and omissions made by GmbH and Clayton in deciding to open their accounts and deposit money with Clayton. They assert that Clayton, as a FCM, had a duty under the CFTC rules to supervise the Enterprise.[11] The plaintiffs claim Clayton violated other CFTC rules by failing to (1) explain the risks of transactions in commodity futures markets; (2) obtain signed risk disclosure statements and written authorization forms prior to initiating any transactions; (3) ensure that all solicitations were accurate and free from false representations or omissions; and (4) see that all persons soliciting customers, including foreign agents, were registered with and approved by the CFTC.[12] The plaintiffs claim that they relied on the lawfulness and legitimacy of the Enterprise. The defendant's malfeasance, they assert, cost the plaintiffs an average of $10,000 each.[13]

In 1982, some of the plaintiffs commenced an action for reparations with the CFTC pursuant to section 14 of the CEA, 7 U.S.C. § 18 (1982), which were dismissed in 1984.[14] They filed the instant action on September 9, 1985, claiming three causes of action: (1) violation of section 4b of the CEA; (2) common law fraud; and (3) RICO violations. Clayton moves, pursuant to rules 9, 12, and 54 of the Federal Rules of Civil Procedure, to dismiss, or, alternatively, for summary judgment. Clayton asserts four grounds for dismissal: (1) the complaint fails to state a claim on which relief can be granted because it is predicated on alleged violations of rules that have been improperly promulgated by the CFTC; (2) all three causes of action are barred by applicable statutes of limitations; (3) the complaint fails to plead fraud with the particularity required by rule 9(b) of the Federal Rules of Civil Procedure; and (4) *forum non conveniens.*

*Discussion*

Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1337 (1982) and principles of pendent jurisdiction.

---

tion herein was gleaned from the oral argument on this motion on January 17, 1986.

**11.** CFTC rule 166.3 states,

Each Commission registrant, except an associated person who has no supervisory duties, must diligently supervise the handling by its partners, officers, employees and agents (or persons occupying a similar status or performing a similar function) of all commodity interest accounts carried, operated, advised or introduced by the registrant and all other activities of its partners, officers, employees and agents (or persons occupying a similar status or performing a similar function) relating to its business as a Commission registrant. 17 C.F.R. § 166.3 (1985).

**12.** The relevant CFTC rules are as follows:

(a) No futures commission merchant or, in the case of an introduced account, no introducing broker may open a commodity futures account for a customer unless the futures commission merchant or introducing broker first: (1) Furnishes the customer with a separate written disclosure statement containing only the language set forth in paragraph (b) of this section (except for nonsubstantive additions such as captions); and (2) receives from the customer an acknowledgment signed and dated by the customer that he received and understood the disclosure statement.

17 C.F.R. § 1.55(a) (1985).

No futures commission merchant, introducing broker or any of their associated persons may directly or indirectly effect a transaction in a commodity interest for the account of any customer unless before the transaction the customer, or person designated by the customer to control the account:

(a) Specifically authorized the futures commission merchant, introducing broker or any of their associated persons to effect the transaction (a transaction is "specifically authorized" if the customer or person designated by the customer to control the account specifies (1) the precise commodity interest to be purchased or sold and (2) the exact amount of the commodity interest to be purchased or sold); or

(b) Authorized in writing the futures commission merchant, introducing broker or any of their associated persons to effect transactions in commodity interests for the account without the customer's specific authorization. 17 C.F.R. § 166.2 (1985).

**13.** The plaintiffs' losses ranged from a high of $185,000 to a low of $3,000.

**14.** Forty-nine of the plaintiffs brought an action for reparations before the CFTC. Their claims were dismissed on August 22, 1984, because the claimants failed to post a bond as required by CFTC rule 12.21, 17 C.F.R. § 12.21 (1985).

For the purposes of Clayton's motion, the pleadings are viewed in the light most favorable to the plaintiff, with all reasonable inferences drawn and any doubts or ambiguities resolved in the plaintiff's favor. *See Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 115 (2d Cir. 1984); *Patrick v. Le Fevre*, 745 F.2d 153, 158 (2d Cir.1984).

### A. Claims for Relief Under the CEA

■ Clayton contends that the plaintiffs' claims are all predicated on alleged violations of rules invalidly promulgated by the CFTC and must, therefore, be dismissed.

The plaintiffs' first cause of action is brought pursuant to section 4b of the CEA, 7 U.S.C. § 6b (1982). Section 4b is an antifraud provision similar to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982). In relevant part, it reads:

> It shall be unlawful (1) for any member of a contract market ... (A) to cheat or defraud or attempt to cheat or defraud such other person; (B) wilfully to make or cause to be made to such other person any false report or statement thereof, or wilfully to enter or cause to be entered for such person any false record thereof; (C) wilfully to deceive to attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person; ... AND PROVIDED FURTHER, ... such transactions shall be made in accordance with such rules and regulations as the Commission may promulgate regarding the manner of the execution of [commodity] transactions.

7 U.S.C. § 6b (1982). Unlike other sections of the CEA, section 4b does not expressly

state that violations of rules promulgated thereunder will constitute a violation of the CEA. Clayton, therefore, contends that the CFTC rules enacted using the authority of section 4b are illegitimate and that the plaintiffs may not base their claims on violations of these rules.

Section 8a(5) of the CEA authorizes the CFTC to "promulgate such rules and regulations as ... are reasonably necessary to effectuate the purposes of this [Act]." 7 U.S.C. § 12a(5) (1982). The purpose of the CEA is to "insur[e] fair practice and honest dealings of the commodity exchanges and [to] provid[e] a measure of control over those forms of speculative activity which often demoralize the markets to the injury of producers, customer, and the exchanges themselves." 1974 U.S.Code Cong. & Ad. News 5843, 5844. *See Psimenos v. E.F. Hutton & Co.*, 722 F.2d 1041 (2d Cir.1983) (One of the basic purposes of the CEA is to protect the integrity of the U.S. markets from fraudulent schemes regardless of the citizenship of the participants.). We find the CFTC rules upon which the plaintiffs base their claims to be valid because they further the purposes of the CEA—the integrity of the commodity markets and the protection of customers from fraudulent schemes—and especially the purposes of section 4b.[15]

In addition to finding these rules to have been validly promulgated, we note that the plaintiffs' claim is brought under section 4b of the CEA and the plaintiffs' allegations of CFTC rule violations are merely evidence of their section 4b claim. We find, therefore, that the plaintiffs' first cause of action states a cognizable claim for which relief can be granted. Hence, we deny this aspect of Clayton's motion to dismiss. However, as discussed below, the plaintiffs have not pleaded their allegations of fraud with sufficient particularity to withstand

**15.** We also note that agency authority to enact rules is broad and courts defer to their actions. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) ("When faced with a problem of statutory construction, this Court shows great deference to the interpretation given in the statute by the ... agency charged with its

administration."); *Mourning v. Family Service Publications, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973) (The validity of a regulation promulgated under an empowering provision of a statute will be sustained so long as it is related to the purposes of the Act.).

defendant's challenge under Fed.R.Civ.P. 9(b). *See infra* pp. 449–450.

### B. Statute of Limitations

#### 1. CEA Claims

█ The plaintiffs' CEA claim is brought pursuant to section 4b as an implied private right of action.[16] An implied right of action, of necessity, does not expressly provide a timeliness rule for filing a claim. In such situations the federal court must "'borrow' the most suitable ... timeliness statute from some other source." *Delcostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). The general rule has been for federal courts to "look to the limitation periods of their forum states governing the most analogous cause of action." *Fustok v. Conti-Commodity Services, Inc.*, 618 F.Supp. 1076, 1078 (S.D.N.Y.1985); *see Delcostello, supra*, 462 U.S. at 158–59, 103 S.Ct. at 2287. In this case the plaintiffs' claims rest, in one way or another, on the defendants' fraudulent behavior. The most analogous state statute, in this forum, is a six-year statute of limitations for fraud. N.Y.Civ. Prac.Law & R. § 213(8) (McKinney 1972).[17]

Clayton, however, argues that substantial federal interests necessitate turning away from state law and borrowing an analogous federal statute of limitations. *See Delcostello, supra,* 462 U.S. at 171–72, 103 S.Ct. at 2294–95 ("when federal policies are at stake and the practicalities of litigation make [a federal timeliness] rule a significantly more appropriate vehicle ... we have not hesitated to turn away from state law.") Specifically, Clayton urges an analogy to section 22 of the CEA, 7 U.S.C. § 25 (1982), which provides for a two-year statute of limitations for private rights of action under the CEA. Clayton argues that adopting a longer limitation period for implied private rights of action will create an incentive to file private law suits rather than bringing a reparations claim before the CFTC.[18] In this instance, Clayton's fears of obfuscating federalism are overstated, since there is a finite group of plaintiffs with implied private actions which accrued before the 1982 amendments.

More importantly, Congress was mindful of this problem when it established a new private cause of action and decisively stated in sections 22(d) "that [this new cause of action] shall not affect the right of any party which accrued prior to [January 11, 1983]."[19] 7 U.S.C. § 25(d) (1982). There-

**16.** While the 1982 amendments to the CEA, 7 U.S.C. § 25 (1982), expressly authorized a private right of action for customers of the commodity markets, the plaintiffs' cause of action accrued prior to the enactment of this provision. Thus, the plaintiffs properly brought this as an implied action under the general fraud provision of section 4b. 7 U.S.C. § 6b (1982). *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 393–94, 102 S.Ct. 1825, 1847, 72 L.Ed.2d 182 (1982).

**17.** Neither party has suggested that we look to the New York "borrowing" statute, N.Y.Civ. Prac.Law & R. § 202 (McKinney 1972). Under that statute, a lawsuit instituted in New York by a non-resident, based upon a cause of action accruing in a state other than New York, is time barred if the statute of limitations of either that state or New York has expired prior to the institution of the lawsuit. *See Armstrong v. McAlpin*, 699 F.2d 79 (2d Cir.1983); *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir.1977); *Klock v. Lehman Bros. Kuhn Loeb Inc.*, 584 F.Supp. 210 (S.D.N.Y.1984). The plaintiffs' injury (financial loss) occurred in Germany, at least for fifty-four

of the fifty-six plaintiffs. The German statute of limitations applicable to the plaintiffs' claims is a factual issue, which, in any event, may not properly be addressed on this motion for summary judgment.

**18.** Section 14 of the CEA allows persons alleging violations of the CEA to seek reparations by petitioning the CFTC within two years after the cause of action accrues. 7 U.S.C. § 18 (1982). However, this Court is aware of no case in which analogy was made to the two-year federal timeliness rule in section 14. *See Shelley v. Noffsinger*, 511 F.Supp. 687, 690–91 (N.D.Ill. 1981); *Grayson v. Conti-Commodity Services, Inc.*, [1978–80 Transfer Binder] Comm.Fut.L. Rep. (CCH) ¶ 20,858 at 23,518 (D.D.C.1980); *Jones v. B.C. Christopher & Co.*, 466 F.Supp. 213, 228 (D.Kan.1979).

**19.** In a recent decision in this district, Judge Lasker applied much the same reasoning when he chose to borrow an analogous timeliness rule from state law rather than apply the two-year limitations period of section 22. *Fustok v. Conti-Commodity Services, Inc.*, 618 F.Supp. 1076, 1080 (S.D.N.Y.1985).

fore, since the plaintiffs' claim accrued prior to January 1983, we find it inappropriate to restrict them to the two-year limitations period of section 22 if a longer period would have been available to them for their implied right of action under section 4b.[20]

Since the plaintiffs filed their action on September 9, 1985, four years after they learned of the alleged fraudulent activities of the defendants, their section 4b claims are not time barred. Clayton's motion with respect to this cause of action is, therefore, denied.

### 2. Common Law Claims

█ Clayton argues that the plaintiffs' common law claims are really conversion claims and, hence, barred by a three-year statute of limitations. *See* N.Y.Civ. Prac.Law & R. § 214(3) (McKinney 1972). As pleaded, the complaint describes the plaintiffs' reliance on certain alleged misrepresentations and omissions by the defendants in soliciting the plaintiffs to open commodity futures trading accounts. After investing in the advertised "low risk" T-bonds, the plaintiffs discovered that, not only were the risks in the T-bond futures market much greater than originally represented, but the defendants were also using the plaintiffs' money to invest in other commodities.

Fraud is the intentional perversion of the truth for the purposes of inducing another in reliance upon it to part with some valuable thing belonging to him. Prosser, *The Law of Torts*, at 685–86 (4th ed. 1971). Misleading representations and concealments also constitute fraud. Clayton ar-

gues that in earlier reparations hearings before the CFTC, the plaintiffs alleged "churning" by defendants. Churning, or frequent trades by a broker to maximize commissions, may be conversion. Conversion is defined as the unauthorized assumption and exercise of the right of ownership over monies belonging to another and the alteration of its condition. Prosser, *The Law of Torts* at 83 (4th ed. 1971). The plaintiffs assert that part of the defendants' fraud was unauthorized trades in their accounts. Although the plaintiffs' complaint fails to provide sufficient details about the representations made to them, there are enough allegations to support a cognizable claim of fraud, rather than mere conversion.[21] Thus, Clayton's motion to dismiss the common law fraud claims as untimely is denied. We find, however, that these fraud claims have not met the requirements of rule 9(b) of the Federal Rules of Civil Procedure of pleading fraud with particularity. Therefore, we must dismiss these fraud claims with leave to replead. *See infra* pp. 449–450.

### 3. RICO Claims

█ Clayton moves to dismiss the plaintiffs' RICO claims as time barred. RICO sets up a federal scheme that "seek[s] the eradication of organized crime in the United States ... by establishing new penal prohibitions, ... and new remedies to deal with unlawful activities of those engaged in organized crime." *Durante Bros. & Sons, Inc. v. Flushing National Bank*, 755 F.2d 239, 248 (2d Cir.1985), *cert. denied,* — U.S. —, 105 S.Ct. 3530, 87 L.Ed.2d

---

**20.** Amendments to existing acts are not applied retroactively when a court in this circuit is selecting a timeliness rule. In *EEOC v. Enterprise Association Steamfitters Local 638*, 542 F.2d 579, 590 (2d Cir.1976), *cert. denied,* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977), the Court of Appeals for the Second Circuit reversed the district court's retroactive application of a new statute of limitations governing back pay in an EEOC action stating, "[T]he subsequent enactment cannot be indicative of the prior congressional intent." A court cannot apply a new timeliness rule to causes of action which accrued earlier and guess at Congressional intentions. However, in *Sam Wong & Sons,*

*Inc. v. New York Mercantile Exchange,* 735 F.2d 653, 676 n. 30 (2d Cir.1984), the court considered the 1982 amendments to the CEA in order to glean Congressional intent about a substantive provision. The Second Circuit looked at a new provision defining "bad faith" in order to decide whether or not the Exchange could be held liable for a breach of duty to a customer. *See de Atucha v. Commodity Exchange, Inc.,* 608 F.Supp. 510 (S.D.N.Y.1985).

**21.** Any claim that is wholly grounded in conversion will be time barred under N.Y.Civ. Prac.Law & R. § 213(4) (McKinney 1972).

654 (quoting Organized Crime Control Act of 1970, Pub.L.No. 91–452 84 Stat. 922 (1970) (Statement of Purpose and Findings)). Included in the statutory definition of prohibited "racketeering activity" are the crimes of securities, mail, and wire fraud. In addition, RICO establishes a far reaching civil enforcement scheme and provides a private civil action to recover treble damages for injury "by reason of a violation of" RICO's substantive provisions. 18 U.S.C. § 1964(c) (1982). RICO is the first federal statute that expressly provides for a private damage remedy for using the mails and/or wires by an enterprise in the furtherance of a pattern of fraudulent activity.[22] However, RICO specifies no time period for filing these civil actions.

As noted earlier, when a federal statute does not specify a limitations period for a concomitant private right of action, courts must borrow an analogous state or federal statute of limitations. *Delcostello v. International Brotherhood of Teamsters, supra,* 462 U.S. at 158, 103 S.Ct. at 2287. Although the general rule is to borrow an analogous state statute, *see supra* pp. 446–447, when federal policies are at stake, courts have not hesitated to look for a timeliness rule in federal law that provides a closer analogy. *Delcostello, supra,* 462 U.S. at 171–72, 103 S.Ct. at 2294–95. We believe that, since the RICO statute envisions a *national* policy to fight organized crime, its enforcement should proceed in as uniform a manner as possible. Were we to look to state statutes for analogous limitations periods we would defeat the uniform federal enforcement of RICO and encourage forum shopping. Different states may have varying limitations periods for the same underlying crimes (*e.g.,* fraud). If a plaintiff's claim was untimely in one state he might shop to find another forum where his claim would not be barred.

Clayton allegedly received monies transferred over wires as a part of a larger pattern of fraudulent activity in commodity trading. An analogous federal statute is section 4b of the CEA which makes it unlawful "for any member of a contract market, ... to cheat or defraud [or to] wilfully ... [make] ... any false report or statement [to another person]." 7 U.S.C. § 6b (1982). A private right of action for CEA violations is now governed by a two-year statute of limitations. 7 U.S.C. § 25 (1982). In view of the need for uniformity in administering civil RICO actions and the fact that the plaintiffs' allegations rest on violations of section 4b of the CEA and CFTC rules, we find it proper to borrow section 22(d) of the CEA for the plaintiffs' RICO

**22.** Civil RICO is becoming an increasingly wide net for any conspiracy-like pattern of activity. Of 270 RICO actions decided between 1970 and 1985 in federal district courts, 43% were decided in 1984 alone. 40% involved securities fraud and 37% involved common law fraud in a commercial or business setting. Only 9% of these civil RICO cases involved allegations of any criminal activity. *See Report of the Ad Hoc Civil RICO Task Force of the ABA Section of Corporations, Banking & Business Law* 55 (1985). *See generally* Milner, *A Civil RICO Bibliography,* 21 C.W.L.R. 409 (1985).

In *Sedima S.P.R.L. v. Imrex Co., Inc.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Court rejected lower courts' construction of section 1964(c) that would have permitted private actions only against defendants who had been convicted on criminal charges and only where there had been a "racketeering injury." The Court held that nothing in the language of section 1964(c) precludes any civil suit as long as a plaintiff can sustain the requirements of section 1962, proving "(1) conduct; (2) of an enterprise;

(3) through a pattern; (4) of racketeering activity." *Id.,* 105 S.Ct. at 3285. The Supreme Court read this RICO provision expansively and found nothing in the statute's history, language, or considerations of policy that should limit civil RICO suits. The Court, though, in a footnote, suggested that the definition of a "pattern of racketeering activity" might provide the basis for limiting the recent proliferation of civil RICO suits. *Id.* at 3285 n. 14.

Nevertheless, in considering the appropriate timeliness rule for the instant civil RICO claims, we are mindful that "suits are being brought—in unfettered discretion of private litigants—in federal court against legitimate businesses seeking treble damages in ordinary fraud and contract cases." *Id.* at 3291 (Powell, J. dissenting). The legislative history makes clear that, in part, RICO was intended to deter organized crime, and any effect it had beyond such crime was only meant to be incidental. *See* 116 Cong.Rec. 35,342–44 (1970) (remarks of Sen. McClellan). This initial impetus should not be forgotten.

claims.[23] These claims are, therefore, untimely and Clayton's motion to dismiss plaintiffs' RICO claims is granted.

## C. Rule 9(b)

■ Clayton moves to dismiss the plaintiffs' fraud claims for failing to plead fraud with the particularity required under Fed. R.Civ.P. 9(b). The Federal Rules of Civil Procedure mandate a "short plain statement [showing] that [a] leader is entitled to relief." Fed.R.Civ.P. 8. However, rule 9(b) demands that fraud "be stated with particularity," and thus, requires more than a "short plain statement." Hence, it is insufficient in pleading fraud to merely set forth generalized allegations.

The Federal Rules recognize that there is a propensity to make frivolous claims of fraud which may irreparably harm the reputation of a defendant. *Decker v. Massey Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982). In security fraud cases, strike suits are a common pretext to engage in costly discovery, after which, in many instances, the fraud claims evaporate. *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972); *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd mem.*, 636 F.2d 1201 (2d Cir.1980).

For a complaint to pass muster in this district it must allege, with some specificity, the *acts* constituting fraud. *Rodman v. Grant Foundation*, 608 F.2d 64, 73 (2d Cir.1979) (emphasis added). A conclusory allegation that defendant's conduct was fraudulent, contained misrepresentations, or was deceptive is not sufficient. *Segal v. Gordon, supra*, 467 F.2d at 606. Thus, a plaintiff must plead facts that give rise to

an inference of fraud, *Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 768 (S.D.N.Y. 1981), *aff'd*, 697 F.2d 296 (2d Cir.1982), and adequately apprise the defendant of the misconduct complained of. *Gross v. Diversified Mortgage Investors, supra*, 431 F.Supp. at 1087. *See Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 422–23 (S.D.N.Y. 1978). The defendant can then prepare a defense.

To be deemed sufficient, a complaint must identify " '1) precisely what statements were made, and 2) the time and place of each statement and the person responsible for making [or], (in the case of [an] omission, not making) the same, 3) the content of such statements and the manner in which they misled the plaintiff, [and] 4) what the defendants obtained as a consequence of the fraud.' " *Fidenas A.G. v. Honeywell, Inc.*, 501 F.Supp. 1029, 1039 (S.D.N.Y.1980) (quoting *Todd v. Oppenheimer, supra*, 78 F.R.D. at 420–21). *Accord Conan Properties, Inc. v. Mattel Inc.*, 619 F.Supp. 1167 (S.D.N.Y.1985). Here, the plaintiffs' complaint fails to detail or document 1) the precise relationship among the defendants; 2) how their accounts were set up and by whom; 3) what forms plaintiffs signed; and 4) what those forms authorized. Furthermore, the plaintiffs fail to particularize the exact *acts* that constitute fraud—what disclosures of risk were made and what omissions were later discovered—on which this entire action is based.

Plaintiffs' complaint makes only general allegations and fails to specify the acts constituting fraud. Therefore, we must dismiss the plaintiffs' first and second

**23.** Earlier, in selecting a timeliness rule for the CEA claims, we reached the opposite conclusion and chose not to borrow section 22 of the CEA. That choice was mandated by the language of section 22(d), which prohibits affecting rights arising under the CEA. The plaintiffs' RICO claims do not "arise under" the CEA. Rather, they arise under the RICO statute and the defendants alleged acts of mail and wire fraud. Since applying a shortened statute of limitations to the RICO claims does not restrict the plaintiffs' rights arising under the CEA, and since (as discussed *supra* ) the RICO statute envisions na-

tional enforcement, we find it appropriate to borrow the two-year statute of limitations under section 22 for the plaintiffs' RICO claims. In *Fustock v. Conti-Commodity Services, Inc., supra*, 618 F.Supp. at 1081, Judge Lasker reached a different result because that case was about to go to trial and the court felt it was an efficient use of judicial resources to permit both the CEA and the RICO claims to go to trial rather than severing the two and risking a costly retrial if the Court of Appeals for the Second Circuit reversed the district court's ruling.

causes of action (CEA violations and common law fraud), with leave to replead within 30 days.[24]

### D. *Forum Non Conveniens*

■ Clayton also moves to dismiss this action on grounds of *forum non conveniens*. The threshold requirement in considering the dismissal of a *forum non conveniens* motion is the existence of an alternative forum. *Gulf Oil v. Gilbert*, 330 U.S. 501, 505, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947). Clayton has consented to jurisdiction in Germany should we grant the instant application. However, there remains an issue of whether the plaintiffs have an adequate remedy if this action were brought under German law. We find it premature to decide this issue because the pleadings before us do not provide the necessary facts to weigh the relative interests for a change of forum.

A plaintiff's choice of forum will generally remain undisturbed unless, in the court's discretion, the private interests of the parties and the public interest of the forum are found to be oppressive to the defendant. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). In this action it is as yet uncertain whether the acts complained of by the plaintiffs and the relevant evidence and witnesses are located primarily in New York or in West Germany. When the plaintiffs replead their complaint with greater specificity, the Court will be in a better position to weigh the relevant *forum non conveniens* factors. The Court, therefore, denies this aspect of Clayton's motion with leave to renew.

### *Conclusion*

The plaintiffs' complaint states a cognizable cause of action under the CEA. Both the plaintiffs' claim brought pursuant to section 4b of the CEA and the claim for common law fraud are governed by a six-year timeliness rule, N.Y.Civ.Prac.Law & R. § 213(8), and, hence, are not time barred. However, both of these claims are dismissed, with leave to replead within 30 days, for failing to meet Fed.R.Civ.P. 9(b) requirements.

The plaintiffs' RICO claim, brought pursuant to 18 U.S.C. § 1961 *et seq.* (1982), is governed by a two-year statute of limitations borrowed from an analogous federal statute, section 22(d) of the CEA, 7 U.S.C. § 25(d) (1982), and is, therefore, time barred.

Clayton's motion to dismiss for *forum non conveniens* is denied with leave to renew.

SO ORDERED.

---

**24.** The Court is mindful that the requirements of rule 9(b) must be reconciled with rule 8. *Felton v. Walston & Co., Inc.*, 508 F.2d 577, 581 (2d Cir.1974); 5 C. Wright & A. Miller, *Federal Practice and Procedure* ¶ 1298 at 407–08 (1969). Striking a balance between simplicity and particularity is especially difficult in this case, in which fifty-six plaintiffs have chosen to bring this suit together rather than file separate actions. However, they may not, thereby, circumvent pleading requirements. For an amended complaint to survive another rule 9(b) challenge, the plaintiffs must identify the precise time, place, and circumstances of the fraud alleged as to each of the plaintiffs. The Court suggests, however, that fraudulent acts or omissions may be pleaded in somewhat general statement with attached schedules providing the details regarding each claimant.