Todd RUFF, Plaintiff,

v.

**GENESIS HOLDING CORPORATION,**
**Leo Blank and Joseph R. Cordaro,**
**jointly and severally, Defendants.**

**No. 89 CIV 1963 (KC).**

United States District Court,
S.D. New York.

Jan. 8, 1990.

Lawrence Gottlieb, New York City, for plaintiff.

Susan Ratner & Michael Feldberg, Shea & Gould, New York City, for defendants.

## AMENDED MEMORANDUM AND ORDER

CONBOY, District Judge.

This case involves allegations of fraud in the solicitation of investors in a real estate partnership. Plaintiff Todd Ruff charges the defendants, Genesis Holding Corporation ("Genesis"), Leo Blank, and Joseph R. Cordaro,[1] with violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, Section 20(c) of the Exchange Act, Section 17(a) of the Securities Act of 1933, Sections 1961 and 1962 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Section 352–e of New York State's General Business Law, common law fraud, and breach of a continuing duty to disclose. Genesis and Blank have moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(6), for failure to state a claim, and under Fed. R.Civ.P. 9, for failure to plead fraud with particularity. For the reasons set forth below, the motion is granted in part and denied in part, with leave to replead.

The Complaint alleges that Ruff purchased stock in Genesis pursuant to an offering set forth in a Private Placement Memorandum (the "PPM"), and that the stock is now "worthless." Complaint ¶ 23. The PPM disclosed that Genesis, "through wholly-owned subsidiaries, intends to act as co-general partner of public limited partnerships and as joint venturer or principal in the acquisition of land for residential, commercial and industrial real estate developments and projects." PPM (attached to Notice of Motion as Exhibit B)[2] at 4–5. According to the complaint, defendants Genesis and Blank, Genesis' President, set out to defraud Ruff and others into purchasing stock in Genesis by disseminating a purportedly misleading PPM, along with certain "Literature."[3] The Complaint also alleges that defendants offered to Ruff and other holders of Genesis stock an opportunity to purchase, with their Genesis stock, an interest in a limited partnership called Rolling River Associates, Ltd. ("Rolling River"), which was formed to acquire and develop property. This opportunity was presented to Ruff and other shareholders in Genesis in a so-called "Redemption Offering."[4]

---

1. Service was not effectuated upon defendant Cordaro.

2. We note that the PPM was not annexed to the Complaint. If a document is incorporated by reference into a complaint, however, it may be considered as part of the pleading. *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985) (citations omitted). The Second Circuit has recently reiterated that "'limited quotation does not constitute incorporation by reference.'" *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989) (quoting *Goldman,* 754 F.2d at 1066). Because the PPM was referred to extensively throughout the Complaint, rather than merely quoted from sporadically, we regard it as having been incorporated by reference into the Complaint.

3. Just as we determined that the PPM was incorporated by reference into the Complaint, we regard the Literature as having been incorporated by reference into the Complaint, even though it was not annexed to the Complaint. We note further that Ruff himself annexes the Literature to his papers in opposition to the motion to dismiss, *see* Affidavit of Lawrence M. Gottlieb in Opposition to Motion of Defendants Genesis Holding Corporation and Leo Blank to Dismiss the Complaint ("Gottlieb Aff."), Exhibit A; and that Ruff quotes extensively from the Literature in his Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pltf.Mem.") at pp. 30–33. *See National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Laboratories,* 850 F.2d 904, 910 n. 3 (2d Cir.1988) (magistrate was authorized to treat letter as incorporated by reference into complaint when, inter alia, plaintiffs quoted entire text of letter in a memorandum of law) (cited in *Cosmas v. Hassett,* 886 F.2d at 13).

4. The Redemption Offering, annexed to Pltf. Mem. as Exhibit B, is referred to only briefly and sketchily in Paragraph 43 of the Complaint. Accordingly, we do not regard it as having been incorporated by reference into the Complaint. *See Cosmas v. Hassett,* 886 F.2d at 13.

■ To set forth a claim of fraud, allegations must be pleaded with particularity pursuant to Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally." This requirement is applicable to claims under Section 10(b). *See Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986); *Ross v. A.H. Robins,* 607 F.2d 545, 557 (2d Cir. 1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) is satisfied if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of not making) the same, (3) the context of such statements and the manner in which they misled the plaintiffs, and (4) what the defendants obtained as a consequence of the fraud.

*Stevens v. Equidyne Extractive Industries 1980, Petro/Coal Program 1,* 694 F.Supp. 1057, 1061 (S.D.N.Y.1988); *Bingham v. Zolt,* 683 F.Supp. 965, 973 (S.D.N.Y.1988); *Posner v. Coopers & Lybrand,* 92 F.R.D. 765, 769 (S.D.N.Y.1981), *aff'd,* 697 F.2d 296 (2d. Cir.1982). These requirements have been applied stringently, particularly where allegations of securities fraud are involved. *Tobias v. First City Nat'l Bank and Trust Co.,* 709 F.Supp. 1266, 1276–77 (S.D.N.Y.1989) (collecting cases).

■ With respect to those allegations in the Complaint which involve statements made in or omitted from the PPM and the Redemption Offering, "[r]eference to [an] Offering Memorandum satisfies 9(b)'s requirements as to identification of the time, place, and content of the alleged misrepresentations" and "no specific connection between fraudulent representations in the offering memorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of the securities in question." *Luce v. Edelstein,* 802 F.2d at 55. Nevertheless, allegations grounded in the offering memorandum must be based on specific facts allegedly misrepresented in that memorandum. *Id.* Applying these guidelines, we find that Ruff's allegations, in Paragraph 15 of the Complaint, which refer to the PPM, and in Paragraph 43 of the Complaint, which refer to the Redemption Offering, pass muster under Rule 9(b)'s requirements as to identification of the time, place and content of the alleged misrepresentations, even though some of them could have been more detailed.

With respect to those allegations in the Complaint which refer to misstatements in or omissions from the Literature, it is no mystery who prepared the letter, dated June 24, 1986, captioned "TO ALL BOARD MEMBERS," which is signed by Leo Blank, and which was presented to Ruff along with the PPM. With respect to the "Draft for Broker–Dealer Use Only—Not for Distribution," however, it is not clear who prepared this "circular" and when. Nevertheless, we believe that the defendants are on sufficient notice as to the contents of this document, so that Rule 9(b)'s requirements as to identification of time, place and content are satisfied. *See Ross v. A.H. Robins,* 607 F.2d at 557 (purpose of Rule 9(b) is to give defendant in a fraud action "fair notice of what the plaintiff's claim is and the grounds upon which it rests").

Despite Ruff's success in meeting Rule 9(b)'s requirements as to time, place and content, the fraud allegations in the Complaint suffer from a fatal defect which requires dismissal under Rule 9(b): Ruff has not pleaded a single fact through which an inference of scienter can be made. This defect also requires dismissal of Ruff's securities fraud claims under Rule 12(b)(6), because, "[t]o state a claim under Section 10(b), a complaint must allege material misstatements or omissions indicating an intent to deceive or defraud in connection with the purchase or sale of a security." *Luce v. Edelstein,* 802 F.2d at 55 (citing *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). Although Rule 9(b) provides that intent may be averred generally, fraud allegations must also provide a basis for inferring

fraudulent intent. *Bingham v. Zolt*, 683 F.Supp. 965, 973 (S.D.N.Y.1988) (citing *Ross v. A.H. Robins*, 607 F.2d at 548)).

Nothing in the Complaint remotely suggests that the defendants acted intentionally or with reckless disregard. Ruff simply states, in a conclusory manner, that "[u]pon information and belief, defendants knew or should have known the falsity of the aforesaid representations," Complaint ¶ 16, and further, "[u]pon information and belief, defendants made the aforesaid representations with intent that plaintiff rely thereon," Complaint ¶ 17. Putting aside for the moment the general inadequacy of claims made "upon information and belief," *Posner v. Coopers & Lybrand*, 92 F.R.D. at 769, we find that Ruff's pleading of scienter is wholly insufficient. It alleges no "facts showing a motive for committing fraud and a clear opportunity for doing so," *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987) (citing *Goldman v. Belden*, 754 F.2d at 1070), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); neither does it "plead scienter by identifying circumstances indicating conscious behavior by the defendant," *Beck*, 820 F.2d at 50 (citations omitted).

To the contrary, the PPM gives the general impression that defendants, rather than fraudulently inducing potential investors, were warning potential investors of the high risks involved in the venture. The PPM is replete with precautionary language, including such statements, in capital letters, as "[T]HESE SECURITIES ARE HIGHLY SPECULATIVE AND INVOLVE SUBSTANTIAL RISKS INCLUDING DILUTION, NEW BUSINESS AND ARBITRARILY DETERMINED OFFERING PRICE," PPM at 1, and "[T]HE INVESTMENT DESCRIBED HEREIN INVOLVES A HIGH DEGREE OF RISK, AND ONLY THOSE PERSONS WHO ARE ABLE TO BEAR THE FINANCIAL RISKS REFERRED TO IN THIS PRIVATE PLACEMENT MEMORANDUM SHOULD CONSIDER PARTICIPATION IN THE SHARES. (SEE 'RISK FACTORS.')" PPM at 4. An entire section entitled "High Risk Factors" begins

with a warning, in bold face and capital letters, which reads: "**THE SHARES BEING OFFERED INVOLVE A HIGH DEGREE OF RISK AND THEREFORE, ARE CONSIDERED EXTREMELY SPECULATIVE. THEY SHOULD NOT BE PURCHASED BY PERSONS WHO CANNOT AFFORD TO LOSE ALL FUNDS INVESTED.**" PPM at 6. With respect to the financial projections in the PPM, the PPM indicates, as the eleventh high risk factor, that

the projections included in this private placement memorandum are for illustrative purposes only. The projections are based on assumptions which are deemed reasonable however, such assumptions are based upon events over which the Company may not have control. There is no assurance that actual events will correspond with assumptions. Accordingly there can be no assurance that projections will be met.

PPM at 9–10.

█ We doubt that liability can be predicated upon statements that clearly "bespeak caution." *Luce v. Edelstein*, 802 F.2d at 56 (citations omitted). "Reliance on statements which are directly contradicted by the clear language of the offering memorandum through which plaintiffs purchased their securities cannot be a basis for a federal securities fraud claim." *Feinman v. Schulman Berlin & Davis*, 677 F.Supp. 168, 170 (S.D.N.Y.1988). Ruff argues, however, that certain projections and statements, particularly in the Literature, were not preceded by precautionary language. Pltf.Mem. at 23–34. It is possible, though unlikely, that Ruff relied primarily on this Literature, even though the precautionary language of the PPM was reiterated in the Subscription Agreement, attached to the PPM, which required the subscriber to have read the PPM carefully. In addition, contentions with respect to specific facts or promises, which the defendants knew or should have known were false at the time they were made, will withstand a motion to dismiss. *Luce v. Edelstein*, 802 F.2d at 56. Thus, rather than dismiss all of Ruff's securities fraud

claims with prejudice, we dismiss them with leave to replead, in accordance with the above discussions on scienter and on the implications of words bespeaking caution.

Some of Ruff's securities fraud claims, however, are dismissed with prejudice for other reasons. These claims include the claims under Section 17(a) of the Securities Act, the claim under Section 352–e of New York's General Business Law, and the contentions relating to the Redemption Offering. First, the Section 17(a) claims are dismissed with prejudice because, as we have previously held, Section 17(a) does not provide for a private cause of action. *Tobias v. First City Nat'l Bank and Trust Co.,* 709 F.Supp. 1266, 1274–76 (S.D.N.Y.1989). Our reasons for so holding are fully set forth in the *Tobias* opinion, and we will not repeat them here.

■ Second, Ruff's claim under Section 352–e of New York's General Business Law must be dismissed for two reasons. To begin with, by its terms Section 352–e applies only to public offerings. The PPM clearly indicates that "[the offering of Genesis stock] is intended to be a non-public offering." PPM, Schedule 1 at 2 ("Notice to New York Residents"). In addition, Ruff was unmistakably on notice of the fact that the securities described in the PPM "HAVE NOT BEEN REGISTERED PURSUANT TO THE SECURITIES ACT OF 1933, AS AMENDED, NOR HAVE THEY BEEN REGISTERED UNDER THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES ... NEITHER THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSIONER HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN, AND ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE." PPM at 1. Accordingly, Ruff cannot be heard to allege that he was misled as to the fact that the Genesis securities had not been, and would not be, registered, and his claim under Section 352–e, Claim 4, is dismissed with prejudice.

■ Third, Ruff's securities fraud claims with respect to the Redemption Offering, Claims 5, 6, and 7 of the Complaint, must be dismissed because Ruff has no standing to bring these claims. To bring a valid claim under Section 10(b) and Rule 10b–5, a plaintiff must be a purchaser or seller of securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731–32, 95 S.Ct. 1917, 1923–24, 44 L.Ed.2d 539 (1975). Ruff neither purchased nor sold securities in connection with the Redemption Offering. Ruff contends, however, that his "power" to purchase securities under the Redemption Offering, provided exclusively to holders of Genesis stock, was "a right analogous to a put, call or option whereby the holder can exercise that right at its discretion." Pltf.Mem. at 44. Under *Blue Chip Stamps,* a holder of a right such as a put, call or option may qualify as a purchaser of securities. *Id.* at 751, 95 S.Ct. at 1932. We reject the contention that Ruff held such a right. Ruff was no more than an offeree of the Redemption Offering, just as the plaintiffs in *Blue Chip Stamps,* who, the Supreme Court held, did not have standing, were no more than offerees pursuant to a consent decree. *Id.* at 725, 95 S.Ct. at 1920. Ruff did not hold a right, pursuant to a contract with Genesis, to exercise a put, call, or option to buy stock in Rolling River under the Redemption Offering. Because Ruff did not purchase any stock in Rolling River, he cannot bring a claim for securities fraud pursuant to the Redemption Offering. Accordingly, Claims 5, 6, and 7 are dismissed with prejudice.[5]

**5.** We note that Ruff's claims pursuant to the Redemption Offering are weak at best. For example, in Paragraph 43(a) of the Complaint, Ruff contends that the Redemption Offering was misleading with regard "the failure by Genesis to complete any of the proposed business described in the [PPM]." Yet, the Redemption Offering describes in detail, in a section entitled "Status of the Genesis Holding Corporation," the various misfortunes which befell Genesis. Redemption Offering at 7–9. In addition, "the basis for the redemption offer contained in the Redemption [Offering]," allegedly misstated, according to Paragraph 43(b) of the Complaint, seems to be fully set forth in the Redemption Offering at 1–10.

Finally, we turn to Ruff's common law fraud claim and his RICO claim, both of which are dismissed with leave to replead. The common law fraud claim suffers from the same defects as the securities fraud claims, namely Ruff's failure to plead scienter and the presence in the PPM of words bespeaking caution which make Ruff's reliance on certain projections and predictions unreasonable as a matter of law.

■■ For the same reasons, the RICO claim, which seems to rely in part on the securities fraud claims, must be dismissed. To state a cause of action under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). When fraud forms the basis of a RICO complaint, the fraud alleged must meet the pleading requirements under Rule 9(b). *Newman v. L.F. Rothschild*, 651 F.Supp. 160, 162 (S.D. N.Y.1986). Ruff's RICO claim, set forth in a conclusory manner in Paragraphs 57, 58, and 59, is extremely sketchy and vague. In particular, the pleading of alleged mail and wire fraud is wholly inadequate, as it fails to indicate when, where and how these acts occurred and by whom they were committed.

Although we dismiss the RICO claim with leave to replead, we are constrained to note that the claim seems to be extremely weak. As we pointed out above, in connection with the securities fraud claims, there is no indication of any fraudulent intent among the defendants, much less an indication that defendants "unlawfully, willfully and knowingly participated in the conduct of the affairs of [an] enterprise through a pattern of racketeering in violation of 18 U.S.C. Section 1962(d)." Complaint ¶ 59. We note further that we have dismissed, with prejudice, Ruff's claims of securities fraud with respect to the Redemption Offering, which apparently constitutes one of the predicate acts upon which Ruff bases his RICO claim. Pltf.Mem. at 37.

In sum, Ruff's securities fraud claims, pursuant to Section 10(b), Rule 10b–5, and Section 20(c), which relate to the PPM, his RICO claim, and his common law fraud claim are dismissed with leave to replead within twenty days of the date of this order. Ruff's Section 17(a) claim, his Section 352–e. claim, and his securities fraud claims which relate to the Redemption Offering are dismissed with prejudice.

SO ORDERED.