R. C. GLUCK & Co., INC., Respondent, *v.* LOUIS TANKEL, Doing Business as GENERAL STAMP Co., Appellant.

First Department, February 28, 1961.

*Julius Paull* for appellant.

*Maurice V. Seligson* for respondent.

STEVENS, J. Defendant appeals from an interlocutory judgment entered in an action for an accounting, which judgment awarded plaintiff-respondent $18,887.53 on its first cause of action, severed the second and third causes of action and referred them to a Special Referee to hear and determine in accordance with the exact formula of disposition used by the court in determining the first cause.

The Trial Judge found that a joint venture existed between the parties, that there was a breach by defendant-appellant of his fiduciary duty, that plaintiff-respondent was entitled to an accounting and, on the Trial Judge's own computation, the amount determined was awarded the plaintiff. The second and third causes were severed and referred.

Defendant-appellant now urges that no joint venture was alleged or attempted to be proved prior to January 8, 1957, and that prior to such date he owed no duty to plaintiff-respondent. No agreement of joint venture was made in reliance upon any false representation of defendant-appellant. Defendant-appellant asserts that the inclusion in the judgment and decree of a direction to pay the plaintiff-respondent the amount adjudged within 30 days after service of a copy of the judgment with notice of entry was error.

The parties are wholesale stamp dealers who, prior to the incidents complained of, had engaged in numerous ventures. Involved in this proceeding were three causes of action based upon three deals between the parties. These are referred to as the " Russian ", " Polish " and " Liberian " transactions. The " Polish " and " Liberian " deals are the subjects of the second and third causes of action and will not be dealt with at length. The " Russian " deal formed the basis of the monetary judgment and 30-day direction, and it is of the findings and determinations by the trier of the facts as to that transaction that the defendant-appellant largely complains.

In October or November, 1956, prior to defendant-appellant's departure for Russia, the defendant and Michael Gluck (for the plaintiff) discussed the purchase of stamps by defendant-appellant, who had acted as managing agent for the parties in various previous joint ventures. Plaintiff-respondent agreed to join with defendant-appellant in any reasonable purchase or deal of

stamps which were to be purchased for resale. While defendant was abroad he sent plaintiff a post card which stated that he was negotiating. Previously defendant had cabled plaintiff asking for " our best offer " for certain stamp issues.

Upon defendant-appellant's return he informed plaintiff-respondent that he had consummated a deal in Russia for stamps at a price of $250,000, had made a deposit of 10%, or $25,000, and that the stamps would be sent to a bank in New York and withdrawn in lots upon payment of the sums agreed upon in the contract. In fact, however, defendant-appellant had made a deposit of $12,500, which was 10% of the actual price of only $125,000. Defendant-appellant asked if plaintiff-respondent wished to join in the deal. Plaintiff-respondent had his own expert check the stamp list. Thereafter, and about January 8, 1957, defendant-appellant was informed by plaintiff-respondent that he would join in the transaction. Plaintiff-respondent obtained a loan of $25,000, one half of which was to be used to cover his half of the asserted down payment and the other half representing his share of the sum asserted to be necessary to withdraw the first lot of stamps. Defendant-appellant later repaid one half of this sum or $12,500.

Subsequently, a dispute arose between the parties, and defendant-appellant notified plaintiff-respondent that the deal fell through and that no lots could be withdrawn because of a lack of funds and an inability to meet the scheduled payments. Actually, defendant-appellant thereafter withdrew two lots at a cost of approximately $12,500 each and sold them for an estimated 100% profit. He failed to notify or account to plaintiff-respondent for such moneys.

The facts as stipulated and as further found by the Trial Judge fully warranted his conclusion as to a joint venture as claimed by the plaintiff, and a breach by defendant-appellant of his fiduciary duty. Defendant-appellant misrepresented the purchase price, sold to the joint venture at a higher price, and later retained the secret profit made on the sales of two lots of stamps. This was not a fraud action where monetary damages were sought but one for an accounting in a joint venture, and it is so concluded here. Both parties testified that there had been a previously existing relationship of trust and confidence between them. It was in this atmosphere that plaintiff-respondent said he would, and later did, join defendant-appellant in the Russian stamp deal. While the relationship of joint adventurers existed, defendant-appellant misrepresented that the deal was terminated and thereafter surreptitiously withdrew and sold two lots of stamps at a profit. It could also have been

found, as testified to by Gluck, that the plaintiff-respondent was induced to free defendant-appellant of his obligation under the Russian contract to offer certain series of the stamps to plaintiff-respondent at cost because of plaintiff-respondent's belief that plaintiff-respondent was a part of the joint venture. Since this was a joint venture, defendant-appellant is properly held accountable to his coadventurer for the secret profits made. He is liable therefor because of his breach of his fiduciary duty. (See *Meinhard* v. *Salmon,* 249 N. Y. 458; *May* v. *Hettrick Bros.,* 181 App. Div. 3, affd. 226 N. Y. 580.)

In support of its position that the inclusion of the 30-day direction was error, defendant-appellant cites the cases of *People ex rel. Bellovin* v. *Sheriff of Kings County* (246 App. Div. 623, affd. 270 N. Y. 631) and *Geery* v. *Geery* (63 N. Y. 252). The *Bellovin* case, decided in 1935, and the *Geery* case, decided in 1875, held that a judgment in an action for a partnership accounting is enforcible by execution only. As the authority for its determination, the court in the *Bellovin* case cited, *inter alia,* sections 504 and 505 of the Civil Practice Act and section 753 of the Judiciary Law.

In 1947, upon recommendation of the Judicial Council, the Legislature amended both section 753 of the Judiciary Law and section 505 of the Civil Practice Act (L. 1947, ch. 900). Section 505 was amended by the addition thereto of subdivision 5, quoted below. Section 505 now provides in pertinent part:

'' In any of the following cases a judgment may be enforced by serving a certified copy thereof upon the party against whom it is rendered   *   *   *   and, if he refuses or wilfully neglects to obey it, by punishing him for a contempt of the court:

*   *   *

'' 5. Where the judgment requires a trustee or *person acting in a fiduciary relationship* to pay a sum of money for a *wilful* default or *dereliction* of his duty. In a case specified in this subdivision, if the judgment is final, it may be enforced as prescribed in this section, either simultaneously with, or before, or after the issuing of an execution thereupon, as the court directs.'' (Emphasis supplied.)

Unless subdivision 5 is applicable to the case at bar, the direction was error. It is necessary then to examine the possible scope of subdivision 5.

The Report of the Judicial Council refers to the proposed new subdivision 5 and its purpose thusly:

'' The recommended addition of a new subdivision 5 to section 505 would overcome a number of decisions to the contrary

by giving to a court of record power to punish as a contempt a refusal or wilful neglect by a fiduciary to pay a money judgment rendered against him for a default of his trust. This amendment is similar to a provision in section 84 of the Surrogate's Court Act, and would equalize the power of other courts of record with that of the surrogate's court in dealing with defaulting fiduciaries. The recommended amendment implements the law's policy of requiring a high standard of conduct of a fiduciary by furnishing an additional deterrent against its violation." (Thirteenth Annual Report of N. Y. Judicial Council, 1947, pp. 44–45.)

" It is recommended that section 505 of the Civil Practice Act be amended by adding thereto a new subdivision 5, which would permit the punishment of a fiduciary or trustee for contempt for the wilful neglect or refusal to pay a judgment for a sum of money resulting from a wilful default by a trustee or fiduciary even though the judgment is enforceable by execution.

" The law, as a matter of policy, requires a higher standard of conduct of a fiduciary or trustee ". (*Ibid,* p. 242.)

" [N]ew subdivision 5 is couched in broad general terms since it is the fiduciary relationship that is the basis of the power to punish for contempt." (*Ibid,* p. 245.)

Section 826 of the Civil Practice Act, headed " Right to arrest depending upon the nature of action ", subdivision 7, gives a specific description of fiduciaries, yet by its very language such description is not intended to be exclusive, i.e., " a public officer or by an attorney, solicitor or counselor, or by an officer or agent of a corporation or banking association * * * or by a factor, agent, broker, *or other person in a fiduciary capacity.*" (Emphasis supplied.)

The Report of the Judicial Council points out that the proposed subdivision 5, " is similar to a provision in section 84 of the Surrogate's Court Act, and would equalize the power of other courts of record with that of the surrogate's court in dealing with defaulting fiduciaries." It is reasonable to construe such language as expressing a desire to afford a remedy by the method proposed where none theretofore existed.

Turning now to section 84 of the Surrogate's Court Act, entitled " Enforcement of a decree or order by punishment for contempt ", this section provides, in part, " a decree or order of a surrogate's court directing the payment of money, or requiring the performance of any other act, may be enforced by serving a certified copy thereof upon the party against whom it is rendered ", etc., and if such person " refuses or wilfully neglects to obey it ", he may be punished for a contempt of

court. The enumerated instances are where such decree or order cannot be enforced by execution; where a part of such decree or order cannot be so enforced contempt may be ordered as to such part; or where an execution issued has been returned wholly or partly unsatisfied. Where, however, the delinquent is an executor, administrator, guardian or testamentary trustee and the decree relates to the fund or estate, no such conditions precedent are attached. It rests in the discretion of the Surrogate. It may be noted that the four categories of fiduciaries specified are those fiduciaries with which Surrogate's Courts are chiefly concerned.

While section 84 expressly declares " [t]he surrogate, in his discretion, may refuse to punish any person for contempt of court, as authorized in this section " (such paragraph having been added by L. 1936, ch. 338, in effect April 9), the fact that such power was discretionary seems to have been recognized long before 1936. (See *Matter of Judicial Settlement of Snyder,* 103 N. Y. 178 [1886]; *Matter of Strong,* 111 App. Div. 281 [1906], affd. 186 N. Y. 584.) The effect of the use of the word " may " in the old statutes was considered to make such statutes discretionary.

Similarly, the use of the word " may " in section 826 of the Civil Practice Act, has been construed as vesting discretion in the court, rather than giving a party an absolute right to arrest under its provisions. (*Gelles* v. *Rosenbaum,* 141 Misc. 588; *Frank* v. *Tuthill,* 241 App. Div. 720.)

" The Legislature ordinarily uses appropriate language to express its intention, and, as a general rule, if there is nothing in an act or surrounding circumstances to indicate a contrary intention, words of command are construed as peremptory, and words of discretion are treated as permissive. That is to say, ' may ' usually means ' may ', and ' shall ' generally means ' shall '. But such is not always the case. Whether a given provision of a statute is mandatory or directory cannot be made to depend on form alone; it goes to the substance and is to be determined by the legislative intent, not by the language in which that intent is clothed." (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 177.)

Tested by the standard expressed in section 177 (*supra*) by cases arising under the sections cited in the Report of the Judicial Council heretofore referred to, and by cases involving the application of section 505 of the Civil Practice Act (*Nelson* v. *Hirsch,* 240 App. Div. 983, appeal dismissed 264 N. Y. 316, court saying contempt discretionary; *Victor* v. *Turetz,* 266 App.

Div. 311) it may fairly be concluded that the *nature of the power* to punish for contempt under section 505, including subdivision 5, is discretionary. " Discretion in this connection means a sound judicial discretion, enlightened by intelligence and learning, controlled by sound principles of law, of firm courage combined with the calmness of a cool mind, free from partiality, not swayed by sympathy nor warped by prejudice nor moved by any kind of influence save alone the overwhelming passion to do that which is just. It may be assumed that conduct manifesting abuse of judicial discretion will be reviewed and some relief afforded." (*Davis* v. *Boston El. Ry.*, 235 Mass. 482, 496–497.)

In determining whether such power was intended to embrace within its scope partners or joint venturers, we look first to the language of subdivision 5. " Where the judgment requires a trustee *or person acting in a fiduciary relationship* to pay a sum of money for a wilful default or dereliction of his duty " (emphasis supplied) he *may be* punished for contempt of court. The language used is not restrictive.

" Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." (Partnership Law, § 43, subd. 1.)

Joint adventurers owe a high degree of fidelity to each other (*Meinhard* v. *Salmon*, 249 N. Y. 458). The incidents and obligations are similar to those existing in a partnership and they are accountable for secret profits. (*May* v. *Hettrick Bros.*, 181 App. Div. 3, affd. 226 N. Y. 580, *supra*; *Matter of Kohn*, 26 Misc 2d 659, affd. 282 App. Div. 1045; *Schlesinger* v. *Regenstreif*, 26 Misc 2d 604.)

Accounting and impressment of a trust on the proceeds are incidental relief to a dissolution (*Friedland* v. *Friedland*, 12 Misc 2d 349; *Jones* v. *Jones*, 15 Misc 2d 960). But, a " court of equity will entertain an action for an accounting where it is necessary so to do in order to compel one partner to carry out his agreement with another one in the transaction of copartnership business even though a dissolution is not asked for." (*Bailly* v. *Betti*, 241 N. Y. 22, 27.)

In *Pieper* v. *Renke* (4 N Y 2d 410) (an action by a mother against her daughter for an accounting and for incidental relief), the court applied subdivision 5 of section 505 of the Civil Practice Act. The court found that the daughter acted as trustee

of certain funds turned over by the plaintiff mother for a specific purpose and that she had breached her fiduciary duty. The trial court was itself able to compute the amount due and therefore did not direct an accounting.

In *Matter of McCulloch* (1 A D 2d 968) the court pointed out that even if surcharging orders against a substitute trustee in an accounting be considered as judgments, subdivision 5 of section 505 would not be applied because there was no adjudication in the orders that the appellant was guilty of a "wilful default or dereliction of his duty", nor had a certified copy of each of the orders been served upon the appellant.

Personal service of the order on the offending party's attorney will not suffice (*Shakun* v. *Shakun,* 17 Misc 2d 935, where husband sought to have wife punished in contempt). It would seem that a wife might, under certain conditions, have her husband punished as and for a contempt under the subdivision (cf. *Cegala* v. *Cegala,* 273 App. Div. 798). The section is designed to afford "a remedy for an existing wrong." (Concurring opinion *Cegala* v. *Cegala, supra.*) (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 54.) The section and subdivision are applicable to a judgment confirming an award of arbitrators (*Matter of Hunter* [*Proser*], 274 App. Div. 311, affd. 298 N. Y. 828; Civ. Prac. Act, § 1466).

We have seen that the subdivision may be applied where the fiduciary relationships involved a trustee, a mother and daughter, and a husband and wife. These are close and sensitive relationships. The stated purpose of the subdivision was to afford a particular remedy where none existed and to overcome a number of decisions denying such remedy. The relationship of joint adventurers, while fiduciary, is not nearly as sensitive in human terms as is the relationship of mother and daughter. The statute makes it essential that a wrong be adjudged as to anyone acting in a fiduciary relationship before punishment for a contempt may be utilized, for it requires a "wilful default or dereliction of duty" by one acting in a fiduciary relationship. Moreover, it is discretionary with the court whether contempt will be permitted. No good reason exists to exclude partners or joint adventurers from the statutory scope of the statute, hedged about as it is with the safeguards indicated. Moreover, since the proceeding for an accounting or dissolution, etc., is in equity, the court has wide latitude.

As pointed out, the court could properly refer the other causes to a referee (*Georgen* v. *Nebrich,* 4 A D 2d 526) where, as here, the court prescribes the exact formula of this position to be utilized.

For the reasons stated the judgment appealed from should be affirmed, with costs to plaintiff-respondent.

BOTEIN, P. J., RABIN, VALENTE and McNALLY, JJ., concur.

Judgment and order (one paper) unanimously affirmed, with costs to the respondent.