**Dr. Hillel TOBIAS and Dr. Wendy Tobias, Plaintiffs,**

v.

**FIRST CITY NATIONAL BANK AND TRUST COMPANY, Ajax Energy Partners, Larry K. Nick, Joan Stahl, Mark L. Stahl, and DJ Resources, Inc., Defendants.**

No. 88 Civ. 2544 (KC).

United States District Court,
S.D. New York.

March 27, 1989.

Shea & Gould, New York City, for plaintiffs; Bertram Parkel, Lynne M. Fishman and Steven Gersten, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant First City Nat. Bank & Trust Co.; Philip LeB. Douglas and Steven R. Schindler, of counsel.

Ballon, Stoll & Itzler, New York City, for defendant Joan Stahl; Richard Weinberger and James Klatsky, of counsel.

## OPINION AND ORDER

CONBOY, District Judge:

Plaintiffs, Hillel and Wendy Tobias, bring this action under Sections 12(2) and 17(a)(2) of the Securities Act of 1933 (the "1933 Act"), Section 10(b) of the Securities

Exchange Act of 1934 (the "1934 Act") and Rule 10b–5 promulgated thereunder, common law fraud theories and breach of fiduciary duty. This action arises out of plaintiffs' purchase in June of 1986 of one unit of a limited partnership called Ajax Energy Partners ("Ajax"), a partnership formed to purchase, own and operate an integrated fuel delivery system. The plaintiffs were allegedly induced to invest in Ajax through the efforts of Mark L. Stahl, then a Senior Vice–President of Shearson Lehman Brothers.[1] The general partners of Ajax were Larry K. Nick and D.J. Resources, Inc. The president, director and sole shareholder of D.J. Resources was Joan Stahl, Mark Stahl's wife.

The complaint alleges that Joan Stahl, along with Mark Stahl, Larry Nick, and D.J. Resources, falsely represented orally and/or in a private placement memorandum that the partnership would produce profits in amounts in excess of the purchase price of a limited partnership unit and that the partnership would secure financing on which the partnership would be directly liable for repayment. It also alleges that First City National Bank and Trust Co. ("First City") was engaged in some sort of fraudulent conspiracy with the partnership and that it was therefore chargeable with the claimed misrepresentations made by the partnership defendants.

Some of the defendants, First City and Joan Stahl, have, in lieu of answering, moved to dismiss the complaint pursuant to Federal Rules 9 and 12.[2] In addition, defendant First City has also moved to dismiss the complaint on the grounds of res judicata and/or collateral estoppel. Because objects outside the pleadings were appended to the prior adjudication motion, this Court, after notifying the parties and receiving supplemental submissions, converted the motion into one for summary judgment.

**1.** Marc Stahl was arrested on April 24, 1987 by federal authorities in connection with a checkkiting scheme, unrelated to this action, conducted between two accounts at Shearson. He pleaded guilty to four counts of wire fraud.

**2.** Defendants Ajax Energy Partners and Larry Nick served an answer on June 28, 1988. De-

## I. First City's Prior Adjudication Motion

First City points out that there was a prior state court action between First City as plaintiff and the Tobiases as defendants, in which summary judgment was granted in First City's favor and against the Tobiases. First City claims that res judicata and/or collateral estoppel bars the Tobiases from proceeding against First City here.

As the Second Circuit has expressed, and as followed by Judge Leisure of this District, it is simpler to refer to the preclusion concepts as "issue preclusion," formerly known as "collateral estoppel," and "claim preclusion," formerly known by the name of the broader concept of which it is a part, "res judicata." *Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir.1985); *Deutsch v. Integrated Barter International, Inc.,* 700 F.Supp. 194, 196 (S.D.N.Y.1988). Claim preclusion and issue preclusion are branches of the concept of res judicata. *Murphy,* 761 F.2d at 879. Res judicata will be referred to here in the broad sense as the idea that a matter once litigated should not be relitigated. "Although fair play demands that a party have his day in court, the doctrine of res judicata forecloses a second day." *Id.* Thus, the policies behind the doctrine are evident: finality, avoidance of duplicative litigation, repose and judicial economy. *See* 1B J. Moore, J. Lucas, T. Currier, *Moore's Federal Practice,* ¶ 0.405[1] (1988).

Briefly, claim preclusion "prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was actually raised." *Id.* It involves the relief accorded to the parties on the same "cause of action." *See Deutsch,* 700 F.Supp. at 196. First City alleges that the plaintiffs should be precluded, under the

fendant D.J. Resources, first served personally, then served via the office of the Secretary of State, has not moved or answered. Marc Stahl, who was personally served at Allenwood Federal Penitentiary, has not answered or moved either.

doctrine of claim preclusion, from asserting their claim for common law fraud.

Issue preclusion "refers to the effect of a judgment that prevents a party from litigating, for a second time, an issue of fact or law that has once been decided." *Id.* First City maintains that plaintiffs, under this doctrine, should be precluded from relitigating the issues underlying their federal securities fraud claims.

It is well-settled that, under 28 U.S.C. § 1738 and absent federal law modifying its operation, a federal court must give a state court judgment "the same preclusive effect as would be given the judgment under the law of the state in which the judgment was rendered." *See Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). The Second Circuit considered *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380–382, 105 S.Ct. 1327, 1331–33, 84 L.Ed. 2d 274 (1985), in analyzing whether Congress impliedly repealed section 1738 with respect to securities fraud claims by granting exclusive jurisdiction over such claims to the district courts under the 1933 and 1934 Acts. *See Murphy, supra,* 761 F.2d at 884–85. The circuit court found that the grant of exclusive jurisdiction "did not alone provide sufficient reason to find an implied repeal of § 1738." *Id.* at 885.

■ Accordingly, in examining whether the plaintiffs' federal complaint against First City is precluded by the earlier litigation, this Court must determine what preclusive effect a New York court would give the state court judgment and then give it the same preclusive effect. This Court concludes that, under the facts of this case, only the narrower doctrine of issue preclusion need be considered. Under New York law, two requirements must be satisfied before the doctrine of issue preclusion will be invoked: (1) the identical issue necessarily must have been decided in the prior action and be decisive in the present action; and (2) the party to be precluded must have had a full and fair opportunity to contest the prior determination. *Deutsch,* 700 F.Supp. at 196 (citing *Kaufman v. Eli Lil-*

*ly and Co.,* 65 N.Y.2d 449, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985) and *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 70–71, 298 N.Y.S.2d 955, 959, 246 N.E.2d 725, 728 (1969)). The party seeking to benefit from the doctrine [First City] has the burden of demonstrating the identity of the issues while the parties opposing the application of the doctrine [the Tobias'] have the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action. *Deutsch,* 700 F.Supp. at 196.

## A. Common Law Fraud Claim

■ Regarding the identity of the issues, on the common law fraud claim, Count Four, Complaint ¶¶ 68–81, First City has clearly met its burden. Indeed, both sides admit that Justice Edwards, the state court judge, ruled that the Tobiases failed to sufficiently establish common-law fraud claims. *See* Plaintiffs' Memorandum of Law in Opposition at 9; Defendant's Reply Memorandum In Support at 3. This ruling was necessary to decide the motion for summary judgment. Therefore, it is plain that the first requirement as delineated above is met.

With respect to the second requirement, the Tobiases claim that they were not given a full and fair opportunity to litigate the common-law claim of fraud. *See* Plaintiffs' Memorandum of Law in Opposition at 5, 7. The New York Court of Appeals has enumerated factors to consider in evaluating whether such an opportunity was afforded:

the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of the litigation, the competence and expertise of counsel, the availability of new evidence [and] the differences in applicable law.

*Ryan v. New York Telephone Co.,* 62 N.Y. 2d 494, 478 N.Y.S.2d 823, 827, 467 N.E.2d 487, 491 (1984). A consideration of these factors leads to the conclusion that the plaintiffs here have not satisfied their burden.

The state court action, commenced by First City, was an action for summary

judgment in lieu of complaint based on a promissory note. The Tobiases, who were the defendants below, signed a note on which they defaulted. They defended their default by contending that they were fraudulently induced into entering the Ajax partnership and that First City was engaged in a fraudulent conspiracy with the partnership and, therefore, chargeable with knowledge of the misrepresentations allegedly made by the general partners. Judge Edwards found that the Tobiases' opposing papers, consisting of affidavits, exhibits and memoranda of law, failed to raise a triable issue of fact with respect to the fraud claim. *First City Bank and Trust Co. v. Tobias,* No. 04589/88, slip op. at 3 (Sup.Ct. N.Y. Co. July 22, 1988). First City was granted judgment for approximately $96,000 plus accrued interest, with the issue of attorney's fees adjourned to a later date.

Applying the factors set out in *Ryan* to the case at hand, the state action clearly involved a proper forum. It is equally clear that both the claim against the Tobiases as well as the Tobiases' counterclaim of fraud were important since these were the only issues litigated. Indeed, the Tobiases recognized in their papers submitted in opposition to the summary judgment motion in the state court that "if summary judgment [were] not denied, the Tobias' [would] be barred by the doctrines of collateral estoppel and res judicata from asserting claims against the bank in the federal action they are instituting" (First City's Reply Memorandum at 6, quoting the Tobiases' Memorandum in Opposition in the State Court proceeding). Accordingly, this Court concludes that the Tobiases had an extremely strong incentive to litigate the state court action to the fullest extent. It is also important to note that plaintiffs have retained the services of the same major New York law firm that defended the state court action to prosecute this action so there can be no claim regarding the competence and expertise of counsel.

Attempting to satisfy their burden of showing that they were not given a full and fair opportunity to litigate the prior action, the Tobiases have stated that they are suing First City here for a greater sum of money than was involved in the state court proceeding. The Tobiases, however, fail to point out that the state court action involved a considerable amount of money. Therefore, the fact that they claim more damages than those awarded to First City is in no way dispositive in light of the otherwise strong incentives to litigate the state court action. In addition, the Tobiases also assert that because the state court action was an expedited proceeding of summary judgment in lieu of complaint where they were not afforded an opportunity to take discovery, their claims cannot be precluded as they were not given a full and fair opportunity to litigate. They do not, however, cite any support for this proposition. Indeed, there is authority to the contrary. For example, in *Deutsch,* Judge Leisure stated on similar facts that "[c]ompletely unlimited discovery is not ... necessarily an element of a full and fair opportunity to litigate." 700 F.Supp. at 199. Although the state proceeding was conducted on an expedited basis, there is no evidence that it lacked any of the requisite procedural safeguards under *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 328, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979). If Justice Edwards had found that a triable issue of fact was raised, he would not have been able to grant summary judgment to the Bank. Plaintiffs cannot seriously suggest that in every action brought under CPLR 3213, summary judgment is never denied. A quick glance at the annotations to CPLR 3213 in McKinney's convincingly indicates otherwise. Finally, the fact that the state court proceeding was a summary judgment motion rather than a full trial is also of no significance. A fully litigated and opposed summary judgment determination can constitute the requisite full and fair opportunity to litigate. *See Deutsch,* 700 F.Supp. at 200. Therefore, this Court finds that plaintiffs have not satisfied their burden of showing the absence of a full and fair opportunity to litigate. Accordingly, the plaintiffs are precluded from relit-

igating the issue of common law fraud here.

## B. Federal Securities Law Claims

■ With respect to whether the doctrine of issue preclusion is applicable to the federal securities law claims, the above analysis of the full and fair opportunity to litigate obtains for these claims as well. As to the first requirement in the preclusion analysis, whether the issues in the actions are identical, the discussion in *Murphy v. Gallagher*, 761 F.2d 878 (2d Cir. 1985) is highly relevant. There, the Second Circuit recognized that

> [a]lthough federal courts have developed legal principles that govern the application of § 10(b) and Rule 10b–5, the components of securities fraud cases—such as intent, scienter, fraud, deceit—involve issues regularly adjudicated in the state courts. Issue preclusion is fully applicable when a party has litigated these narrow issues in a state court, and later attempts to litigate them in a federal court. There generally will be a fairly precise overlap between the state and federal claims when the focus is on these narrow issues. This is a strong reason for giving a state-court decision full preclusive effect as § 1738 requires.

*See id.* The court in *Murphy* concluded that, on the specific facts in question, the New York courts would give preclusive effect to the state court judgment and, thus, that it was proper for the district court to bar the relitigation of the issues in federal court. *Id.* at 886. It is important to note that the doctrine of issue preclusion, as applied to the case, disposed of the entire federal action. *Id.* at 886.

The Tobiases claim that Justice Edwards' ruling on the commonlaw fraud claim "has no effect on" the federal securities law claims asserted in this action. On the other hand, First City believes that the state court ruling has a preclusive effect on the federal issues. This Court, based on the analysis in the *Murphy* case, as well as that in the *Deutsch* case, agrees that the doctrine of issue preclusion disposes of the federal securities fraud claims alleged by the Tobiases against First City in this action. The elements of common law fraud based upon a misrepresentation in the sale of securities are essentially the same as the elements of a section 10(b) or rule 10b–5 claim under the federal securities laws. *See Fund of Funds v. Arthur Andersen & Co.*, 545 F.Supp. 1314, 1359 n. 21 (S.D.N.Y. 1982). Both require that the plaintiff prove that the defendant has misrepresented or omitted to state material facts in connection with the purchase or sale of a security, that the plaintiff relied upon such misrepresentations or omissions to his detriment, and that the misrepresentations or omissions were made with scienter. *Id.* (delineating elements of both the federal and state claims); *see also Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985) (delineating elements of federal securities law claims).

In order to succeed on their securities fraud claims in the instant action, the Tobiases are required to prove that First City made a material misrepresentation (or omission) upon which they relied. However, Justice Edwards has already determined that, as to First City, there is no support for the plaintiffs' fraudulent inducement theory or the conspiracy theory. *First City Bank and Trust Co. v. Tobias*, No. 04589/88, slip op. at 2–3 (Sup.Ct. N.Y. Co. July 22, 1988). As the *Murphy* case teaches, "issue preclusion is fully applicable when a party has litigated these narrow issues in a state court, and later attempts to litigate them in a federal court." 761 F.2d at 886. Because of the overlap between the state and federal claims and in light of the fact that the issues of misrepresentation and reliance were already litigated and finally decided,[3] strong reason

---

**3.** The plaintiffs have attached a notice of appeal of Justice Edward's decision to their motion in opposition here in an attempt to show that the state court decision lacks finality for purposes of res judicata and collateral estoppel. However, a judgment remains final unless and until it is actually set aside. *Brown v. Manufacturers Hanover Trust Co.*, 602 F.Supp. 549, 551 (S.D.N.Y.1984); *Fidelity Mortgage Investors v. First National City Bank*, 387 F.Supp. 544, 550 (S.D.N.Y. 1974). In a supplemental affidavit submitted by plaintiffs' counsel after this Court converted the

exists for giving the state court decision full preclusive effect as § 1738 requires. Thus, when preclusive effect is given to the state court's determination on the issues of misrepresentation and reliance, it is impossible for plaintiffs to prevail here on the federal securities law claims set forth in Counts Two and Three [4] of the Complaint as these claims are predicated on establishing misrepresentation. As to the claim under section 12(2) of the 1933 Act (Count One), regarding liability of First City as a secondary participant (an "aider and abettor"), Justice Edwards rejected the plaintiffs' theory of a "fraudulent conspiracy" between the bank and the partnership defendants whereby the bank would be charged with knowledge of any alleged misrepresentations made by the partnership defendants. *First City Bank and Trust Co. v. Tobias*, No. 04589/88, slip op. at 2–3. Accordingly, this claim also is doomed to fail under the doctrine of issue preclusion.

In light of all of the above, the complaint is dismissed as to defendant First City on the ground of issue preclusion.

## II. *Joan Stahl's Motions to Dismiss*

### A. Motion to Dismiss Claims for Failure to State a Cause of Action

#### 1. Section 12(2) Claim

■ Section 12(2) of the Securities Act of 1933 (15 U.S.C. § 77*l* (2)) provides in relevant part that:

Any person who—

(2) offers or sells a security ... by means of a prospectus or oral communication which includes an untrue statement of a material fact necessary in order to make the statements, in light of the circumstances in which they were made, not misleading ... shall be liable to the person purchasing such security from him.

Defendant Joan Stahl claims that plaintiffs have failed to state a cause of action under section 12(2) because they failed to plead facts sufficient to allege that Joan Stahl was a seller or a substantial participant in any sales to plaintiffs, that her acts were the proximate cause of any injury to the plaintiffs, or that she acted with the requisite degree of intent. Memorandum of Law in Support of Defendant Joan Stahl's Motion to Dismiss at 4. Since this court finds that Joan Stahl was a "seller" within the meaning of section 12(2), the motion is denied.

Preliminarily, it should be noted that in order to dismiss an action under Rule 12(b)(6), Fed.R.Civ.P., it must be shown to be "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Furthermore, the court is restricted to evaluating the face of the pleadings, *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985), and must accept the allegations as true. *Klein*

---

motion into one for summary judgment, plaintiff requested that this Court stay this action "until the state court appeal is either decided adversely to plaintiffs or abandoned by them." Affidavit of Lynne M. Fischman, Esq., dated March 6, 1989,

¶ 3. The reasoning behind this request was that plaintiffs would be materially and unnecessarily prejudiced if the Court ... granted summary judgment at this time, since plaintiffs would then be compelled to appeal this Court's resulting judgment in order to prevent it (*i.e.,* the new federal judgment) from constituting *res judicata* which would prejudice plaintiffs' pending appeal of the state judgment. Such an anomalous result would plainly not serve the efficient administration of justice by necessitating fruitless and academic litigation simply in order to keep the

federal action from being formally terminated.

*Id.* at ¶ 2 (emphasis in original). This logic is flawed in that plaintiffs fail to realize that a grant of summary judgment by this Court on the ground of issue preclusion is based entirely on the prior adjudication in state court. Therefore, there is no possibility that summary judgment granted by this Court on that ground could prejudice plaintiffs' state court appeal. If indeed the plaintiffs triumph in their appeal, they can return to this Court and request that such judgment be vacated.

4. For the reasons stated in Section II, B of this opinion, plaintiffs would not have prevailed on Count Three in any event as this Court finds that there is no private right of action under section 17 of the 1933 Act.

*v. Computer Devices, Inc.,* 591 F.Supp. 270, 276 (S.D.N.Y.1984).

Courts called upon to apply section 12 of the 1933 Act have not employed a consistent definition of the term "seller." *Compare Collins v. Signetics Corp.,* 605 F.2d 110 (3d Cir.1979) (strict definition of seller to include only literal seller or one in privity with him); *and McFarland v. Memorex,* 493 F.Supp. 631, 647–648 (N.D.Cal.1980) (same); *with Davis v. Avco Financial Services, Inc.,* 739 F.2d 1057, 1065 (6th Cir. 1984) (proximate cause approach); *and with Hill York Corp. v. American International Franchising,* 448 F.2d 680, 695 (5th Cir.1971) (approach midway between "the antiquated 'strict privity' concept and the overbroad 'participation'. concept").

Under even the most literal application of section 12(2), however, a person who controls a seller is liable as a seller. Section 15 of the 1933 Act provides that

[e]very person who ... controls any person liable under section 11 or 12 shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

Section 15 has been applied in the section 12(2) context. In *Dorfman v. First Boston Corp.,* 336 F.Supp. 1089, 1092–1093 (E.D. Pa.1972), for example, the court held that "[t]he privity requirement of § 12(2) must be read in connection with § 15 of the Securities Act which provides that if an individual controls a person who is liable under § 12, he can be held liable jointly with the controlled person." This rule has been supported by a leading treatise which has stated that "[s]ubject to ... exceptions involving controlling persons and agents, it seems quite clear that § 12 contemplates only an action by a buyer against *his immediate seller.*" 3 Loss, *Securities Regulation* 1719–1720 (1983) (emphasis in original). Although plaintiffs have the burden of proof on the issue of control, *Paul F.*

*Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111, 1120 (5th Cir.1980), this burden has been met since Joan Stahl was the president, director and sole controlling shareholder of D.J. Resources, Inc. and D.J. Resources was one of two general partners in Ajax, the literal seller of the securities at issue. Joan Stahl may thus be found liable under section 12(2).

This is especially true in this circuit where courts have not hesitated to define "seller" broadly enough to include Joan Stahl within the meaning of the term. In *Lorber v. Beebe,* 407 F.Supp. 279 (S.D.N.Y. 1975), for example, the court wrote that

as a general rule, ... the courts have limited the section [12(2)] to plaintiff's immediate seller. [citations omitted] However, over the years, exceptions to this strict privity requirement have developed and, in certain carefully defined instances, liability has been extended to more than the plaintiff's immediate seller. Thus, liability has attached to persons acting as the immediate seller's agent, to defendants who are alleged to be controlling persons of the immediate sellers, and to those who have actively participated in the sale, either as an aider and abettor or as a co-conspirator. [citations omitted]

*Id.* at 287–288. *See also Wilson v. Ruffa and Hanover, P.C.,* 844 F.2d 81, 86 (2d Cir.1988) ("We do not mean to suggest, of course, that plaintiffs must demonstrate loss causation or transaction causation in suits against actual sellers or those who control them."); *Klein v. Computer Devices, Inc.,* 591 F.Supp. 270, 276 (S.D.N.Y. 1984), *modified on rehearing,* 602 F.Supp. 837 (S.D.N.Y.1985) (defendant liable where "substantially participated" in transaction); *Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 913 (S.D.N.Y.1983) ("Although strict privity is not prerequisite to liability, plaintiff must establish clearly that defendant is at least a person acting as the immediate seller's agent, one who is alleged to be a controlling person of the immediate seller; one who actively participated in the sale, either as an aider and abettor or as a co-conspirator, or one under similar circumstances."); *In re Caesars*

*Palace Securities Litigation,* 360 F.Supp. 366 (S.D.N.Y.1973) (defendant liable where plaintiff's injury flowed directly and proximately from defendant's actions).

All of the arguments made by defendant Joan Stahl assume that she is, at most, secondarily liable and, therefore, that plaintiffs must prove causation and scienter as to this claim. As discussed above, however, this is not the case since she controlled a seller and is thus strictly liable under section 12(2). *See Lanza v. Drexel & Co.,* 479 F.2d 1277, 1298 (2d Cir.1973) (section 12(2) "requires privity, or, in the absence of privity, scienter"); *see also Junker v. Crory,* 650 F.2d 1349, 1361 (5th Cir.1981) (in 12(2) actions, plaintiff need not prove that defendant acted with scienter); *Sanders v. John Nuveen & Co.,* 619 F.2d 1222, 1225 (7th Cir.1980), *cert. denied,* 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981) ("It is well settled that § 12(2) imposes liability without regard to whether the buyer relied on the misrepresentation or omission."); *Hokama v. E.F. Hutton and Co., Inc.,* 566 F.Supp. 636, 641 (C.D. Cal.1983) (scienter not required for section 12 primary liability).

### 2. Section 10(b) Claim

In actions under section 10(b), 15 U.S.C. § 78j(b) (1982), or Rule 10b–5, 17 C.F.R. § 240.10b–5 (1986), plaintiffs "must allege that the defendant has misrepresented or omitted to state material facts in connection with the purchase or sale of a security, that the plaintiff relied upon such misrepresentations or omissions to his detriment, and that the misrepresentations or omissions were made with scienter." *In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493, 502 (S.D.N.Y.1987). *See also Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668 (1976). Moreover, "making a specific promise to perform a particular act in the future while secretly intending not to perform that act may violate section 10(b) where the promise is part of the consideration for the transfer of securities." *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986). As stated above, at this stage of the litigation, the plaintiffs are entitled to have their allegations accepted as true. *Klein v.*

*Computer Devices, Inc.,* 591 F.Supp. at 276. Thus, plaintiffs' allegations of misrepresentations and reliance must be accepted. Complaint ¶¶ 47, 48, 53 and 54.

The requirement of scienter has been held to involve an intent to defraud, the knowing use of a device, scheme or artifice to defraud, and at least where there is a fiduciary duty, reckless disregard for the truth. *Gas Reclamation,* 659 F.Supp. at 502; *Lanza,* 479 F.2d at 1301. In *Gas Reclamation,* dismissal of a charge of primary violation of section 10(b) was denied where plaintiff had pleaded that defendant brokers "intended to deceive ... or acted with reckless disregard ..." *Id.* at 503. Dismissal of a charge of secondary violation was denied where plaintiff had pleaded that defendants "knew or should have known" of the fraud alleged. *Id.* In ¶ 51 of the Complaint, plaintiffs in the instant case allege that "defendants knew their [misrepresentations were] false or were reckless in not discovering their falsity," thus meeting the basic pleading requirements. As to whether the plaintiff states circumstances that provide a factual basis for these allegations, attention is directed to Section II, C below.

### B. Section 17(a)(2) of the 1933 Securities Act

■ Joan Stahl moves to dismiss Count Three of the complaint on the ground that section 17 of the Securities Act of 1933 does not provide for a private cause of action. Because this Court finds that this contention is correct, the motion is granted.

In *Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979), the Second Circuit held that section 17(a) provided for an implied private right of action. The Court reasoned that there is "little practical point in denying the existence of an action under section 17 once it is established that an aggrieved buyer has a private action under section 10(b) of the 1934 Act." *Id.* In subsequent cases, however, the Circuit has retreated somewhat from this position. *See Manufacturers*

*Hanover Trust Co. v. Drysdale Securities Corp. et al.,* 801 F.2d 13, 25 (2d Cir.1986) (court declined to take a position on whether a private right of action existed under section 17(a)); *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 559 n. 3 (2d Cir.1985) (*Kirshner* "may be open to reexamination"); *Zerman v. Ball,* 735 F.2d 15, 23 (2d Cir.1984) (no position taken as to existence of private cause of action).

Courts in other Circuits have split on the question of whether an implied private right of action exists under section 17(a). *Compare Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 159 (8th Cir.1977) (no private cause of action), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *and Landry v. All American Assurance Co.,* 688 F.2d 381, 389–91 (5th Cir.1982) (same) *and In re Washington Public Power Supply System Securities Litigation,* 823 F.2d 1349 (9th Cir.1987) (en banc) (criticizing *Kirshner*) *with Newman v. Prior,* 518 F.2d 97, 99 (4th Cir.1975) (private cause of action exists).

Within the Southern District, courts have split on whether *Kirshner* is still good law. In *Ackerman v. Clinical Data, Inc.,* 1985 Fed.Sec.L.Rep. (CCH), ¶ 92,207, at 91,566, 1985 WL 1884 (S.D.N.Y. July 8, 1985), Judge Haight declined to follow *Kirshner.* He reasoned, *inter alia,* that the Supreme Court's decision in *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980), establishing that actions under sections 17(a)(2) and (3) did not require proof of scienter, created a substantial difference between section 17 of the 1933 Act and section 10(b) of the 1934 Act. Thus, *Kirshner*'s reasoning was no longer valid because the implication of a private cause of action under section 17 would allow the restrictions that the Supreme Court placed on 10(b) actions to be circumvented. *Id.* at 91,570. Other cases in the this district have declined to follow *Kirshner. E.g., Dubin v. The E.F. Hutton Group Inc.,* 695 F.Supp. 138, 148 (S.D.N.Y.1988) (Leisure, J.); *Bruce v. Martin,* 691 F.Supp. 716, 725 (S.D.N.Y.1988) (Sweet, J.); *The Limited, Inc. v. McCrory Corp.,* 683 F.Supp. 387, 396 (S.D.N.Y.1988) (Carter, J.); *Center Savings and Loan Ass'n v. Prudential-*

*Bache Securities, Inc.,* 679 F.Supp. 274, 279 (S.D.N.Y.1987) (Haight, J.); *Beres v. Thomson McKinnon Securities, Inc.,* Fed. Sec. L. Rep. (CCH), ¶ 93,395, at 92,072, 1987 WL 16977 (S.D.N.Y.1987) (Knapp, J.); *Anderson v. Lowrey,* 667 F.Supp. 105, 110 (S.D.N.Y.1987) (Sand, J.); *Feinberg v. Leighton,* Fed.Sec.L.Rep. (CCH), ¶ 93,117, 95,505 n. 1, 1987 WL 6147 (S.D.N.Y.1982) (Cedarbaum, J.) (*dictum); cf. Cohen v. Goodfriend,* 665 F.Supp. 152, 156 (E.D.N.Y.1987).

There are, however, courts here which have adhered to *Kirshner. E.g., Ohman v. Kahn,* 685 F.Supp. 1302, 1310 (S.D.N.Y. 1988) (Keenan, J.); *In re Wedtech Corp.,* 85 Bankr. 285, 292 (S.D.N.Y.1988); *Toberoff v. B–J, Inc.,* Fed.Sec.L.Rep. (CCH), ¶ 93,611 at 97,740, 1988 WL 5355 (S.D.N.Y. 1988) (Keenan, J.); *Dannenberg v. Dorison,* 603 F.Supp. 1238, 1241–42 n. 5 (S.D.N.Y.1985) (Sprizzo, J.); *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 545 F.Supp. 1314, 1354 & n. 20 (S.D.N.Y.1982) (Stewart, J.).

This court is persuaded by the position that *Kirshner* is no longer good law. The rationale for the finding of an implied right of action in section 17(a) in *Kirshner* was that since section 17(a) provided substantially the same relief as section 10(b) of the 1934 Securities and Exchange Act, it made no sense to find an implied private right of action in one and not the other. Developments since 1978 materially weaken that argument. As discussed above, the Supreme Court held in *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed. 2d 611 (1980) that actions under sections 17(a)(2) and (3) do not require proof of scienter, unlike actions under section 10(b). Thus, allowing private rights of action under section 17 would allow the restrictions that the Supreme Court has placed on actions under section 10(b) to be circumvented.

Furthermore, sections 11 and 12(2) of the 1933 Act, which expressly provide for civil liability, have detailed substantive and procedural limitations which could be avoided if a private right of action were implied under section 17. There is no evidence of

congressional intent to create such civil liability under section 17. *See* L. Loss, *Fundamentals of Securities Regulation* 148–50 (1983). Under the test enunciated by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) and elaborated on in *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–77, 99 S.Ct. 2479, 2488–90, 61 L.Ed.2d 82 (1979), congressional intent is the most important factor in finding an implied private right of action. Its absence, as well as the fact that the 1933 Act expressly provides for private causes of action in other sections, is strong support for the denial of a private right of action under section 17.

Accordingly, this Court finds that there is no private right of action under section 17 of the 1933 Act. Joan Stahl's motion to dismiss Count Three of the complaint is thus granted, with prejudice.

## C. Rule 9(b) Motion

Rule 9(b) of the Fed.R.Civ.P. requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Motive, intent, knowledge, and other conditions of mind of a person may be averred generally." The specificity requirement of Rule 9(b) has been found to serve several purposes. First, it inhibits the filing of a complaint as a pretext for the discovery of unknown wrongs. *Gross v. Diversified Mortg. Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd*, 636 F.2d 1201 (2d Cir.1980). Furthermore, it compels plaintiffs to place defendants on notice of the exact misconduct with which they are charged and enable them to prepare a defense. *Rich v. Touche Ross & Co.*, 68 F.R.D. 243, 245 (S.D.N.Y.1975). Finally, in cases where fraud is alleged it protects defendants from harm to their reputation resulting from vague and unfounded charges of acts involving moral turpitude. *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972).

Although each determination of compliance with Rule 9(b) "necessarily rests on its particular facts," *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978), as a general rule, courts in this circuit have required that:

> [P]laintiff must specify: (1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the context of such statements and the manner in which they misled the plaintiffs, and (4) what the defendants obtained as a consequence of the fraud. *Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978).

*See also Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 769 (S.D.N.Y.1981), *aff'd*, 697 F.2d 296 (2d Cir.1982); *Fidenas A.G. v. Honeywell, Inc.*, 501 F.Supp. 1029 (S.D.N.Y.1980) and *Gross*, 431 F.Supp. at 1087–88.

These requirements have been applied stringently, particularly where allegations of securities fraud are involved. *E.g., Segal*, 467 F.2d at 608 ("the nature and amount of the securities exchanged [and] the dates of the transaction [must be] disclosed"); *Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661, 665 (S.D.N.Y.1985) ("[Plaintiff]'s statements do no more than state generally that a fraud or misrepresentation was committed. Such all encompassing claims as 'almost all of the representations made by Defendant[s] ... were untrue statements of material facts upon which plaintiff relied' ... do not provide the specificity required by the rule."); *Quintel Corp., N.V. v. Citibank, N.A.*, 589 F.Supp. 1235, 1243 (S.D.N.Y.1984) (plaintiff must specify how he was damaged by the fraud); *Posner v. Coopers & Lybrand*, 92 F.R.D. at 769 (plaintiff failed to identify any specific documents in which the allegedly false and misleading statements occurred and impermissibly made claims "upon information and belief"); *Todd*, 78 F.R.D. at 423 ("the nature, amount and dates of securities transactions must be included in the complaint"); *Gross*, 431 F.Supp. at 1087–88 (complaint dismissed because plaintiff failed to specifically identify the statements, how they were misleading, the time and place of each statement, and

1277

the nature and amount of the securities purchased).

Plaintiffs' complaint fails to meet the requirements of the Rule. The allegations in ¶¶ 36, 37, 47, 48, 59, 60, 70, 71, 72 and 84 of the complaint against Joan Stahl and the other defendants fail to specify which defendant made which misrepresentation and under what circumstances. Plaintiffs must also specify how they were misled by the alleged misrepresentations and what the defendants obtained as a consequence of the fraud. These matters must be pleaded so that defendants may be provided with notice of the exact misconduct with which they are charged.

■ As to the scienter requirement under the section 10(b) claim, plaintiff must come forward with sufficiently particular factual allegations so as to give rise to an inference of knowledge, intent, or reckless disregard by Joan Stahl. At this point, all that is really known about Joan Stahl's involvement is that she was nominally a control person who is liable under section 12(2), where scienter is not required. This fact, however, is of little help with respect to the section 10(b) allegations where scienter is required.

Plaintiffs' only other allegations against Joan Stahl are located in ¶ 14 of the Complaint, which states:

To induce the Tobias' initial investment, Stahl, Nick, Joan Stahl and DJ Resources falsely represented orally and/or in a private placement memorandum provided to all potential investors that: 9a) the Partnership would produce profits in amounts in excess of the purchase price of a limited partnership unit; and (b) the Partnership, itself, not the individual investors, would secure financing on which it would be directly liable for repayment.

It is true that the Second Circuit held in *Luce v. Edelstein*, 802 F.2d at 55, that "[r]eference to [an] Offering Memorandum satisfies 9(b)'s requirements as to identification of the time, place, and content of the alleged misrepresentations" and that "no specific connection between fraudulent representations in the Offering Memorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of the securities in question." The court in *Luce* also required, however, that the allegations grounded in the offering memorandum be based on specific facts allegedly misrepresented in that memorandum. *Id.* This is in keeping with the general requirement in this Circuit that plaintiffs must specify "precisely what statements were made in what documents or oral misrepresentations." *Todd*, 78 F.R.D. at 420–21. Plaintiffs have not fulfilled this requirement since the misrepresentations alleged in ¶ 14 are ascribed to either the private placement memorandum or oral statements, or both. This formulation fails to indicate the circumstances under which the alleged fraud was accomplished with sufficient particularity, unlike the pleadings in *Luce* which referred to specific statements made in the offering memorandum at issue there.

D. Motion to Dismiss Claim for Breach of Fiduciary Duty

■ Joan Stahl moves to dismiss the claim for breach of fiduciary duty on the ground that a fiduciary duty which came into existence after the allegedly fraudulent misrepresentations were made cannot be breached by those misrepresentations. In other words, Stahl contends, her alleged misrepresentations made prior to plaintiffs' purchase of their limited partnership interests cannot subject her to liability for breach of a fiduciary duty. Stahl cites three New York cases to support her position. *Steinbeck v. Gerosa*, 4 N.Y.2d 302, 317, 175 N.Y.S.2d 1, 13, 151 N.E.2d 170, 178 (1958); *Hasday v. Barocas*, 10 Misc.2d 22, 115 N.Y.S.2d 209, 216 (Sup.Ct. N.Y. Cty.1952); *Hermes v. Compton*, 260 A.D. 507, 23 N.Y.S.2d 126 (2d Dep't 1940).

These cases stand, at most, for the general proposition that fiduciary obligations in the partnership context begin at the time the partnership comes into existence. They do not stand for the proposition that nothing which occurred before the date a partnership was formed can create a fiduciary duty among the partners. This proposition was recognized in *R.C. Gluck v. Tankel*, 24 Misc.2d 841, 199 N.Y.S.2d 12,

*aff'd* 12 A.D.2d 339, 211 N.Y.S.2d 602 (Sup. Ct.1961) where the court wrote:

> It is one thing to say ... that the legal consequences of a joint venture begin on a given date, and quite another to say that whatever happened prior to that date may not operate to fasten a duty on each partner to exercise toward the other the highest integrity and good faith—indeed, a full and faithful disclosure.

*Id.* 24 Misc.2d at 847, 199 N.Y.S.2d at 17. Thus, a person contemplating forming a partnership was held liable for appropriating to himself alone the gain from buying a property at a low figure and selling it to the partnership at a higher figure, such property being the business in which the partnership was designed to deal.

None of the cases cited by defendant involved situations where the plaintiff actually became a member of a partnership, and where a general partner took or failed to take actions during the time a partnership was in existence which violated representations made prior to the purchase of limited partnership interests. Upon research, however, this court has uncovered one New York case where plaintiffs have maintained such a cause of action for breach of fiduciary duty. In *Riviera Congress Associates v. Yassky,* 18 N.Y.2d 540, 277 N.Y.S.2d 386 (1966), limited partners were permitted to sue general partners for, *inter alia,* breach of a fiduciary duty which had its origin in the prospectus for the limited partnership. *Id.* at 18 N.Y.2d 540, 545, 277 N.Y.S.2d 386, 390 (court noted existence of such an action that was sent to arbitration).

Joan Stahl's alleged misrepresentations were supposedly designed to induce plaintiffs to purchase limited partnership units and are thus functionally similar to the prospectus at issue in *Yassky.* Furthermore, if this court were to accept defendant's contentions, general partners would be immune from a claim of breach of fiduciary duty as long as they were careful to undertake the obligation prior to the purchase of any limited partnership interests. Such a result hardly comports with the dictates of justice. Therefore, this Court adopts the rule set out in *Tankel,* that prior to formation of the partnership, a duty of good faith and highest integrity may attach, and accordingly, denies the motion to dismiss the claim for breach of fiduciary duty.

## III. *Conclusion*

As to defendant First City, the complaint is dismissed in its entirety on the ground of issue preclusion. As to defendant Joan Stahl, plaintiffs have met the basic requirements for pleading violations of section 12(2) of the 1933 Act and section 10(b) of the 1934 Act. Therefore, Joan Stahl's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Fed.R.Civ.P. for failure to state a claim upon which relief may be granted is denied as to Count One and Two. Joan Stahl's motion to dismiss Count Four of the complaint for common law fraud is also denied, since the same basic pleading requirements apply and pendent jurisdiction exists. Joan Stahl's motion to dismiss Count Five of the complaint for breach of fiduciary duty is also denied, since the pleadings meet the basic requirements for a breach of fiduciary duty action. Joan Stahl's motion to dismiss Count Three of the complaint for violations of section 17(a)(2) of the 1933 Securities Act is granted, with prejudice. Her motion to dismiss Counts One, Two and Four for failure to plead fraud with sufficient particularity is granted. Leave is hereby granted to file an amended complaint within twenty (20) days of this opinion.

SO ORDERED.